LTTS CHARTER SCHOOL, INC., d/b/a
Universal Academy, Appellant,

v.

C2 CONSTRUCTION, INC., Appellee.

No. 05–07–01469–CV.

Court of Appeals of Texas,
Dallas.

Feb. 2, 2009.

Rehearing Overruled Aug. 6, 2009.

Thomas Anthony Fuller, Arlington, TX, for Appellant.

Brian E. Erikson, Timothy A. York, Quilling, Selander, Cummiskey & Lownds, PC, Dallas, TX, for Appellee.

Before Justices BRIDGES, FITZGERALD, and LANG.

## OPINION

Opinion by Justice LANG.

LTTS Charter School, Inc., d/b/a Universal Academy appeals the trial court's denial of its plea to the jurisdiction. In its plea to the jurisdiction, Universal Academy claimed it is immune from C2 Construction's suit for balances allegedly due for construction work. C2 Construction filed a motion to dismiss this appeal contending this Court does not have jurisdiction over this interlocutory appeal because Universal Academy, an open-enrollment charter school, may not appeal the trial court's interlocutory order denying its plea to the jurisdiction under section 51.014(a)(8) of the Texas Civil Practice and Remedies Code as it is not a "governmental unit" as defined by section 101.001(3). We agree. Universal Academy's interlocutory appeal is dismissed.

## I. JURISDICTION OVER INTERLOCUTORY APPEALS

C2 Construction argues section 51.014(a)(8) of the Texas Civil Practice and Remedies Code permits a party to appeal an order that grants or denies a plea to the jurisdiction by a "governmental unit" as defined by section 101.001(3) and Universal Academy, an open-enrollment charter school, is not a "governmental unit." Universal Academy responds that the definition of a "governmental unit" under sec-

tion 101.001(3)(B) and (D) includes several terms which include within their meaning an open-enrollment charter school. Specifically, those terms are "school district," other "political subdivision," or an "institution, agency, or organ of government" deriving its status and authority from the Texas Constitution or laws passed by the legislature under the constitution. Universal Academy offers a patchwork quilt of statutory sections that do not fit together. For the reasons set out herein, we cannot subscribe to the conclusion asserted by Universal Academy.

### A. Standard of Review

An appellate court reviews whether it has jurisdiction over an appeal de novo because jurisdiction is a legal question. *See Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998); *OAIC Commercial Assets, L.L.C. v. Stonegate Village, L.P.,* 234 S.W.3d 726, 735 (Tex.App.-Dallas 2007, pet. denied); *Parks v. DeWitt County Elec. Coop., Inc.,* 112 S.W.3d 157, 160 (Tex.App.-Corpus Christi 2003, no pet.). If the record does not affirmatively demonstrate the appellate court's jurisdiction, the appeal must be dismissed. *Parks,* 112 S.W.3d at 160.

### B. Applicable Law

#### 1. Interlocutory Appeal by "Governmental Unit"

An appellate court's jurisdiction is established exclusively by constitutional and statutory enactments. *See, e.g.,* Tex. Const. art. V, § 6; Tex. Gov't Code Ann. § 22.220 (Vernon 2004). Section 51.014 authorizes appeals of interlocutory orders. Tex. Civ. Prac. & Rem.Code Ann. § 51.014. However, statutorily authorized interlocutory appeals are a narrow exception to the general rule that only final judgments and orders are appealable. *See Lehmann v. Har–Con Corp.,* 39 S.W.3d 191, 195 (Tex.

2001); *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Estate of Arancibia,* 244 S.W.3d 455, 458 (Tex.App.-Dallas 2007, pet. filed); *City of Dallas v. First Trade Union Sav. Bank,* 133 S.W.3d 680, 686 (Tex.App.-Dallas 2003, pet. denied). As a result, appellate courts must strictly construe section 51.014. *See Univ. of Tex. Sw. Med.,* 244 S.W.3d at 458; *see generally, First Trade,* 133 S.W.3d at 686–87 (discussing waiver).

Section 51.014(a)(8) of the Texas Civil Practice and Remedies Code permits a party to appeal an interlocutory order that grants or denies a plea to the jurisdiction by a "governmental unit" as defined in section 101.001. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8). Section 101.001(3)(B) and (D) defines a "governmental unit" as:

(B) a **political subdivision** of this state, including any city, county, **school district,** junior college district, levee improvement district, drainage district, irrigation district, water improvement district, water control and improvement district, water control and preservation district, freshwater supply district, navigation district, conservation and reclamation district, soil conservation district, communication district, public health district, and river authority[.]

(D) **any other institution, agency, or organ of government** the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution.

*See id.* § 101.001(3)(B), (D) (Vernon 2005) (emphasis added respecting terms relevant to discussion).

#### 2. Statutory Construction

In construing a statute, a reviewing court should determine and give effect to the legislature's intent. *See Nat'l Liab.*

*& Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000); *Jones v. State,* 175 S.W.3d 927, 930 (Tex.App.-Dallas 2005, no pet.). If the meaning of the statutory language is unambiguous, a reviewing court adopts, with few exceptions, the interpretation supported by the plain meaning of the provision's words and terms. *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 865–66 (Tex.1999); *Jones,* 175 S.W.3d at 930; *see also Allen,* 15 S.W.3d at 527; *In re BACALA,* 982 S.W.2d 371, 380 (Tex.1998).

■■ If a statute is unambiguous, rules of construction or other extrinsic aids cannot be used to create ambiguity. *Fitzgerald,* 996 S.W.2d at 866; *Jones,* 175 S.W.3d at 930; *accord Burlington N. R.R. Co. v. Okla. Tax Comm'n,* 481 U.S. 454, 461, 107 S.Ct. 1855, 95 L.Ed.2d 404 (1987); *see Allen,* 15 S.W.3d at 527. When we interpret a code enacted by the legislature, we read words and phrases in context and construe them according to the rules of grammar and common usage. TEX. GOV'T CODE ANN. § 311.011(a); *see Jones,* 175 S.W.3d at 930. Words are given their ordinary meaning. *See Fitzgerald,* 996 S.W.2d at 866; *Jones v. Fowler,* 969 S.W.2d 429, 431 (Tex.1998); *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.,* 966 S.W.2d 482, 484 (Tex.1998); *Jones,* 175 S.W.3d at 930; *see also In re BACALA,* 982 S.W.2d at 380 (discussing interpretation of civil statutes).

## C. Application of the Law to the Facts

### 1. "Governmental Unit" Pursuant to Section 101.001(3)(B)

Universal Academy argues it is a "governmental unit" because section 101.001(3)(B) of the Texas Civil Practice and Remedies Code defines a "governmental unit" to include "school districts" and other "political subdivisions" and open-en-rollment charter schools fit within the definition of both of these terms.

### a. "School Districts"

■ First, Universal Academy claims an open-enrollment charter school is a "school district" and because the definition of "governmental unit" includes "school districts," an open-enrollment charter school is also a "governmental unit." Specifically, Universal Academy asserts an open-enrollment charter school is a "school district" because section 12.103(a) of the Texas Education Code states "an open-enrollment charter school is subject to the federal and state laws and rules governing public schools." We cannot agree with that sweeping proposition. Section 12.103(a) does not identify an open-enrollment charter school as a school district. That section only provides that an open-enrollment charter school is subject to the federal and state laws and rules governing public schools. *See* TEX. EDUC. CODE ANN. § 12.103(a) (Vernon 2006). Also, we note section 12.103(b) contains an exception that provides an open-enrollment charter school is subject to the Texas Education Code and rules adopted under it to the extent they specifically apply to open-enrollment charter schools. *See id.* § 12.103(b).

Next, Universal Academy contends it is a "governmental unit" because section 12.105 states "[a]n open-enrollment charter school is part of the public school system of this state." *See Id.* § 12.105. However, the plain language of that section simply states an open-enrollment charter school is "part of" the public school system of this state. It does not establish an open-enrollment charter school as being the same as a school district.

Finally, Universal Academy argues it is to be treated as a school district, citing section 12.1056, because that section spe-

cifically provides an open-enrollment charter school "is immune from liability to the same extent as a school district." *See id.* § 12.1056. However, this particular section merely cloaks an open-enrollment charter school with the immunity from liability of a school district. It does not denominate an open-enrollment charter school to be a school district.

The statutory sections cited by Universal Academy do not point to the result it suggests. Accordingly, we conclude, after a review of the plain language of the sections argued by Universal Academy, the Texas Legislature did not confer open-enrollment charter schools with the same status as a school district in order to include an open-enrollment charter school within the definition of "governmental unit" for purposes of interlocutory appeals.

### b. Other "Political Subdivisions"

 Second, Universal Academy posits that an open-enrollment charter school is a "political subdivision," another of the terms included in the definition of a "governmental unit." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(3)(B). In support of its argument, Universal Academy relies on two Texas Attorney General opinions, which it claims concluded an open-enrollment charter school is a political subdivision. *See* Op. Tex. Att'y Gen. Nos. GA–0664 (2008), GA–0629 (2008). Although the opinions of the Texas Attorney General are not controlling authority, they may be cited as persuasive authority. *See, e.g., HEB Ministries, Inc. v. Tex. Higher Educ. Coordinating Bd.*, 235 S.W.3d 627, 661 n. 148 (Tex.2007); *Comm'rs Court of*

*Titus County v. Agan*, 940 S.W.2d 77, 82 (Tex.1997).

In opinion no. GA–0629, the Texas Attorney General concluded an open-enrollment charter school was a political subdivision under chapter 606 of the Texas Government Code and is an entity for which the state may enter into an agreement with the Social Security Administration. *See* Op. Tex. Att'y Gen. No. GA–0629. However, as the Texas Attorney General noted in his opinion, the definition of a "political subdivision" in chapter 606 is unique in Texas statutes and serves the limited purpose of delineating entities eligible for inclusion in Texas's section 218 Agreement.[1] *See id.*

In opinion no. GA–0664, the Texas Attorney General concluded article III, section 52(a) of the Texas Constitution does not permit a county to gratuitously grant county funds to an independent school district or an open-enrollment charter school. *See* Op. Tex. Att'y Gen. No. GA–0664. He noted the legislature has determined an open-enrollment charter school is a "political subdivision" for various purposes, listing section 12.1053(b)(2) of the Texas Education Code and sections 176.001–176.012 of the Texas Local Government Code as examples. *See id.* Also, the Texas Attorney General stated he could see "no basis for distinguishing a charter school from an independent school district with respect to gratuitous payment of a county's public money." *Id.* However, the opinion does not support the broad proposition that an open-enrollment charter school is a "political subdivision" in all situations.

Neither of the attorney general opinions cited provide guidance that demonstrates

---

1. A section 218 Agreement allows states to enter into voluntary agreements with the Social Security Administration to provide social security insurance benefit coverage to state and local government employees and once that agreement is in place the state may then enter into voluntary agreements with political subdivision to extend that coverage. *See* Op. Tex. Att'y Gen. No. GA–0629.

we should follow Universal Academy's argument and broadly interpret these statutory provisions. We cannot ignore the plain language of the statutes.

Our view is further substantiated by the decision of the Texas Supreme Court in *Texas Department of Transportation v. Sunset Valley,* 146 S.W.3d 637 (Tex.2004). There the Court addressed the argument that the Texas Legislature waived the Texas Department of Transportation's sovereign immunity in section 203.058(a) of the Texas Transportation Code because the City of Sunset Valley is a "state agency" entitled to compensation under that statute. *Id.* at 641–42. However, the Court held that the context of a statute must be carefully scrutinized and although an entity may exercise governmental powers for certain purposes, that does not mean the legislature intended that entity to be considered a state agency for all purposes. *Id.* at 643–44. Accordingly, we conclude the Texas Legislature did not confer open-enrollment charter schools with the same status as a "political subdivision" in order to include open-enrollment charter schools within the definition of a "governmental unit" for purposes of an interlocutory appeal.

### 2. "Governmental Unit" Pursuant to Section 101.001(3)(D)

Next, Universal Academy argues it is a "governmental unit" pursuant to section 101.001(3)(D) of the Texas Civil Practice and Remedies Code. That section defines a "governmental unit" to include an institution or organ of government deriving its status and authority from the Texas Constitution or laws passed by the legislature. Universal Academy claims open-enrollment charter schools derive their status and authority from the constitution and laws passed by the legislature and, as a result, open-enrollment charter schools are "public schools" and "local educational agencies," thereby fitting within the definition of a "governmental unit." *See* TEX. EDUC. CODE ANN. §§ 12.001(a)(2)-(4), 12.105. Universal Academy makes several specific arguments in support of its position.

■ First, Universal Academy argues it is an "institution, agency, or organ of government" because an open-enrollment charter school is a "public school" under sections 12.001(a)(2)-(4) and 12.105 of the Texas Education Code. Universal Academy weaves into this proposition its prior argument that under section 12.105, it meets the definition of a "school district." Further, it directs us to section 12.001(a)(2)-(4), which states:

(a) The purposes of this chapter [concerning open-enrollment charter schools] are to:

(2) increase the choice of learning opportunities **within** the **public school system;**

(3) create professional opportunities that will attract new teachers to the **public school system;**

(4) establish a new form of accountability for **public schools.**

TEX. EDUC.CODE ANN. § 12.001(a)(2)-(4) (emphasis added).

Section 12.105 provides, "An open-enrollment charter school is part of the **public school system** of this state." *Id.* § 12.105 (emphasis added). As stated above, section 12.105 simply states an open-enrollment charter school is "part of" the public school system of this state. Further, section 12.001(a)(2)-(4) only refers to the "purposes" of open-enrollment charter schools as they operate within the public school system of the state. These statutory provisions do not state that an open-enrollment charter school is, by definition, a public school.

In addition, Universal Academy cites *Neeley v. West Orange–Cove Consolidated Independent School District* and *Richardson Independent School District v. Michael Z.* as support for its proposition that open-enrollment charter schools are public schools and therefore, an "institution, agency, or organ of government." *See Neeley v. W. Orange–Cove Consol. Indep. Sch. Dist.,* 176 S.W.3d 746 (Tex.2005); *Richardson Indep. Sch. Dist. v. Michael Z.,* 561 F.Supp.2d 589 (N.D.Tex.2007) (mem.op.). However, in *Neeley,* the Texas Supreme Court commented on the basic structure of Texas's present public school finance system, noting "There are 1,031 independent school districts—more than four times the number of counties" and "There are also six common school districts, *see* Tex. Educ.Code § 22.01–App., with a total of 1,273 students, and 190 charter schools, *see* Tex. Educ.Code §§ 12.001–.156, with 60,833 students." *Id.* at 755 n. 29. This opinion does not demonstrate the Texas Supreme Court has acknowledged that open-enrollment charter schools have the status of public schools for purposes of the definition of "governmental unit" in section 101.001(3)(D) as Universal Academy asserts.

Universal Academy also asserts that, in *Michael Z.,* the District Court for the Northern District of Texas concluded an open-enrollment charter school is a public school. However, in that opinion, the district court found the charter school was a public school because the defendants conceded that point. *Michael Z.,* 561 F.Supp.2d at 599 n. 12. Such a concession in a discrete piece of litigation does not impress that meaning on section 101.001(3)(D) in this case.

Second, Universal Academy argues the legislature's inclusion of open-enrollment charter schools in the definition of a "local educational agency" demonstrates the legislature considers open-enrollment charter schools to have the same status as "public schools." In support of its argument, Universal Academy cites section 37.007(e) of the Texas Education Code and section 89.1115(c)(4) of the Texas Administration Code. *See* Tex. Educ.Code Ann. § 37.007 (Vernon Supp.2008); 19 Tex. Admin. Code § 89.1115(c)(4) (Tex. Educ. Comm'r R., Mem. Understanding Affecting Special Educ. Students).

Chapter 37 of the Texas Education Code addresses discipline, and law and order in schools. Section 37.007 specifically relates to the expulsion of students for serious offenses. *See* Tex. Educ.Code Ann. § 37.007 (Vernon Supp.2008). Section 37.007(e) requires "a local educational agency, including a school district, home-rule school, or open-enrollment charter school" to expel a student who brings a firearm to school. *See id.* § 37.007(e). Similarly, section 89.1115(c)(4) of the Texas Administration Code defines a "local educational agency" as follows:

> (4) Consistent with 20 U.S.C. § 1401(15), "local educational agency" (LEA) means any public authority, institution, or agency having administrative control and direction of a public elementary or secondary school, including a public charter school that is established as an LEA under state law.

19 Tex. Admin. Code § 89.1115(c)(4).

These statutory provisions do no more than include several different entities within the definition of a "public school" and "local educational agency" for a specific purpose and one of those entities is an open-enrollment charter school. Nowhere in these sections are the listed entities defined as being the same. This particular statute simply empowers these entities in a similar way for a specific purpose; that is, discipline and law and order in schools.

**38**

We decline to expand the plain language of the statutes to include the meaning urged by Universal Academy. We conclude the Texas Legislature did not confer open-enrollment charter schools with the same status as an "institution, agency or organ of government" in order to include it within the definition of "governmental unit" for purposes of an interlocutory appeal.

## III. CONCLUSION

An open-enrollment charter school is not a "governmental unit" for purposes of an interlocutory appeal. We conclude this Court does not have jurisdiction over Universal Academy's interlocutory appeal. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(8).

The trial court's denial of Universal Academy's plea to the jurisdiction is not an appealable interlocutory order.

The Court denies the portion of C2 Construction's motion to dismiss for lack of jurisdiction that requests the imposition of sanctions.

The Court grants the portion of C2 Construction's motion to dismiss for lack of jurisdiction that requests a dismissal of this interlocutory appeal.

The appeal is dismissed for lack of jurisdiction.