**LTTS CHARTER SCHOOL, INC., d/b/a Universal Academy, Appellant,**

v.

**Jimmy PALASOTA d/b/a Palasota Property Company, Appellee.**

No. 05–08–01039–CV.

Court of Appeals of Texas, Dallas.

July 28, 2009.

Rehearing Overruled Sept. 1, 2009.

Thomas Anthony Fuller, The Fuller Law Group, Arlington, TX, for Appellant.

Scott A. Scher, Law Offices of Scott A. Scher, Dallas, TX, for Appellee.

Before Justices RICHTER, LANG, and MURPHY.

## OPINION

Opinion By Justice LANG.

LTTS Charter School, Inc. d/b/a Universal Academy appeals the trial court's denial of its plea to the jurisdiction. Appellee Jimmy Palasota d/b/a Palasota Property

Company (Palasota) has not filed a brief before us. In its plea to the jurisdiction, Universal Academy claimed it is a "governmental unit" immune from Palasota's suit for breach of contract and various fraud claims pursuant to section 101.001(3) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(3)(B), (D) (Vernon 2005) (defining "governmental unit" as "political subdivision," including school district, or "any other institution, agency, or organ of government"). We question, *sua sponte*, whether this Court has jurisdiction over this interlocutory appeal. *See OAIC Commercial Assets, L.L.C. v. Stonegate Vill., L.P.,* 234 S.W.3d 726, 735 (Tex.App.-Dallas 2007, pet. denied) (citing *M.O. Dental Lab v. Rape,* 139 S.W.3d 671, 673 (Tex.2004)). In an unrelated case, we addressed an identical jurisdictional issue and determined we did not have jurisdiction of Universal Academy's interlocutory appeal of a trial court's denial of its plea to the jurisdiction pursuant to section 51.014(a)(8) of the Texas Civil Practice and Remedies Code. *See LTTS Charter Sch., Inc. v. C2 Constr.,* 288 S.W.3d 31, 37–38 (Tex.App.-Dallas 2009, no pet. h.); *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon 2005); *Terrell v. Tex. Serenity Acad., Inc.,* 290 S.W.3d 424, 424–25 (Tex.App.-Houston [14th Dist.] 2009, no pet. h.) (relying on this Court's opinion in *LTTS Charter School, Inc. v. C2 Construction* to conclude court of appeals lacked jurisdiction over interlocutory appeal regarding plea to the jurisdiction by open-enrollment charter school). We conclude now, as we did in the *C2 Construction* case, an open-enrollment charter school may not appeal a trial court's interlocutory order denying its plea to the jurisdiction under section 51.014(a)(8) of the civil practice and remedies code because it is not a "governmental unit" as defined by section 101.001(3). *See* TEX. CIV. PRAC. & REM.CODE ANN.

§§ 51.014(a)(8), 101.001(3); *C2 Constr.,* 288 S.W.3d at 34–36, 37–38. Universal Academy's interlocutory appeal is dismissed.

## I. JURISDICTION OVER INTERLOCUTORY APPEALS

Section 51.014(a)(8) of the Texas Civil Practice and Remedies Code permits a party to appeal an order that grants or denies a plea to the jurisdiction made by a "governmental unit" as defined by section 101.001(3). TEX. CIV. PRAC. & REM.CODE ANN. §§ 51.014(a)(8), 101.001(3). Universal Academy did not address our jurisdiction in its brief on appeal. However, the day before oral submission in this case, Universal Academy filed a letter brief addressing the question of this Court's jurisdiction and whether Universal Academy is a "governmental unit" entitled to perfect an interlocutory appeal of the trial court's denial of its plea to the jurisdiction. In that letter brief, Universal Academy noted that approximately two weeks earlier, we issued what it characterized as an erroneous opinion in another case involving Universal Academy that concluded Universal Academy, as an open-enrollment charter school, is not a "governmental unit" entitled to interlocutory review of the trial court's denial of its plea to the jurisdiction. *See id.* § 101.001(3)(B), (D); *C2 Constr.,* 288 S.W.3d at 37–38. In this appeal, Universal Academy does not restate its arguments regarding jurisdiction that we addressed in *C2 Construction.* Rather, Universal Academy brings to our attention in this case what it called the "crux" of its arguments in its motions for rehearing in *C2 Construction,* i.e., that this Court has jurisdiction over Universal Academy's interlocutory appeal because open-enrollment charter schools are within the definition of a "governmental unit" and are "organs of government the status

and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the Constitution." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(3)(D) (defining "governmental unit"). Specifically, in support of its jurisdictional argument, Universal Academy contends that an open-enrollment charter school is a "public school"; then it asserts that because an open-enrollment charter school is a "public school," it is therefore an "organ of government"; and finally, it concludes, based on the first two contentions, an open-enrollment charter school is therefore a "governmental unit" under section 101.001(3)(D).

In its motions for rehearing in *C2 Construction* and in its letter brief in this case, Universal Academy offers new authorities not raised before we issued our opinion in *C2 Construction.* The new authorities include: (1) legislative history purportedly showing the legislature considers open-enrollment charter schools to be public schools; (2) section 100.1011(3) of the Texas Administrative Code, in which the Commissioner of Education purportedly defined charter schools as public schools; and (3) an Eastland Court of Appeals decision that recognized charter schools as "a new type of public school," which, according to Universal Academy, is in direct conflict with this Court's opinion in *C2 Construction.* *See* 19 TEX. ADMIN. CODE § 100.1011(3); *Rosencrans v. Altschuler,* 161 S.W.3d 517, 518 (Tex.App.-Eastland 2004, no pet.). Universal Academy contends that an open-enrollment charter school is a "public school" and therefore is deemed a "governmental unit." *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 51.014(a)(8), 101.001(3). Even were we to assume, without deciding, Universal Academy is a public school, Universal Academy supplies no statutory or case law equating a "public school" with an "organ of government,"

and, ultimately, a "governmental unit." We decline to fill the void by judicial fiat that would force or strain statutory meaning where the legislature has not spoken.

## A. Standard of Review

An appellate court reviews whether it has jurisdiction over an appeal de novo because jurisdiction is a legal question. *See Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998); *OAIC Commercial Assets, L.L.C.,* 234 S.W.3d at 735; *see also C2 Constr.,* 288 S.W.3d at 32–33. If the record does not affirmatively demonstrate the appellate court's jurisdiction, the appeal must be dismissed. *C2 Constr.,* 288 S.W.3d at 32–33.

## B. Applicable Law

### 1. Interlocutory Appeal by a "Governmental Unit"

■ An appellate court's jurisdiction is established by constitutional and statutory enactments. *See, e.g.,* TEX. CONST. art. V, § 6; TEX. GOV'T CODE ANN. § 22.220 (Vernon 2004). Section 51.014 authorizes appeals of interlocutory orders. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014. However, statutorily authorized interlocutory appeals are a narrow exception to the general rule that only final judgments and orders are appealable. *See Lehmann v. Har–Con Corp.,* 39 S.W.3d 191, 195 (Tex. 2001); *C2 Constr.,* 288 S.W.3d at 32–33. As a result, appellate courts must strictly construe section 51.014. *See C2 Constr.,* 288 S.W.3d at 32–33; *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Estate of Arancibia,* 244 S.W.3d 455, 458 (Tex.App.-Dallas 2007, pet. granted); *see generally City of Dallas v. First Trade Union Sav. Bank,* 133 S.W.3d 680, 686–87 (Tex.App.-Dallas 2003, pet. denied).

Section 51.014(a)(8) of the civil practice and remedies code permits a party to ap-

peal an interlocutory order that grants or denies a plea to the jurisdiction by a "governmental unit" as defined in section 101.001. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8). Section 101.001(3)(B) and (D) defines a "governmental unit" as:

> (B) a political subdivision of this state, including any city, county, school district, junior college district, levee improvement district, drainage district, irrigation district, water improvement district, water control and improvement district, water control and preservation district, freshwater supply district, navigation district, conservation and reclamation district, soil conservation district, communication district, public health district, and river authority;
>
> . . .
>
> (D) any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution.

See id. § 101.001(3)(B), (D).

### 2. Statutory Construction

In construing a statute, a reviewing court should determine and give effect to the legislature's intent. See Nat'l Liab. & Fire Ins. Co. v. Allen, 15 S.W.3d 525, 527 (Tex.2000); C2 Constr., 288 S.W.3d at 33–34. If the meaning of the statutory language is unambiguous, a reviewing court adopts, with few exceptions, the interpretation supported by the plain meaning of the provision's words and terms. See Fitzgerald v. Advanced Spine Fixation Sys., Inc., 996 S.W.2d 864, 865–66 (Tex.1999); C2 Constr., 288 S.W.3d at 33–34. The Texas Supreme Court has stated:

> Courts must take statutes as they find them. More than that, they should be willing to take them as they find them. They should search out carefully the intendment of a statute, giving full effect to all of its terms. But they must find its intent in its language, and not elsewhere. . . . They are not responsible for omissions in legislation. They are responsible for a true and fair interpretation of the written law. It must be an interpretation which expresses only the will of the makers of the law, not forced nor strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain.

St. Luke's Episcopal Hosp. v. Agbor, 952 S.W.2d 503, 505 (Tex.1997) (quoting RepublicBank Dallas, N.A. v. Interkal, Inc., 691 S.W.2d 605, 607 (Tex.1985)); see also Wilson N. Jones Mem'l Hosp. v. Ammons, 266 S.W.3d 51, 56 (Tex.App.-Dallas 2008, pet. filed).

Accordingly, if a statute is unambiguous, rules of construction or other extrinsic aids cannot be used to create ambiguity. Fitzgerald, 996 S.W.2d at 866; St. Luke's Episcopal Hosp., 952 S.W.2d at 505; C2 Constr., 288 S.W.3d at 33–34; accord Burlington N.R.R. Co. v. Okla. Tax Comm'n, 481 U.S. 454, 461, 107 S.Ct. 1855, 95 L.Ed.2d 404 (1987). When we interpret a code enacted by the legislature, we read words and phrases in context and construe them according to the rules of grammar and common usage. TEX. GOV'T CODE ANN. § 311.011(a); C2 Constr., 288 S.W.3d at 33–34.

### C. Application of the Law to the Facts

Universal Academy argues it is a "governmental unit" pursuant to section 101.001(3)(D) of the civil practice and remedies code. That section defines a "governmental unit" to include, among other things, an "institution, agency, or organ of government" deriving its status and authority from the Texas Constitution or

laws passed by the legislature. TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(3)(D). In its letter brief respecting jurisdiction, Universal Academy frames its position by saying "open-enrollment charter schools are 'organs of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution.'" Then, Universal Academy takes issue with this Court's opinion in *C2 Construction:*

> This Court construed this statute and determined that it failed to define a charter school as a "public school." *See C2 Construction, Inc.,* 288 S.W.3d at 36–37. Because the Court did not consider charter schools to have "public school status," the Court concluded that charter schools are not organs of state government and therefore do not meet the definition of a "governmental unit" which is entitled to this interlocutory appeal.

Universal Academy misunderstands our opinion in *C2 Construction.* We simply addressed Universal Academy's argument that an open-enrollment charter school is a "public school" under section 12.001(a)(2)-(4) and section 12.105 of the Texas Education Code. In so doing, we concluded there are no statutory provisions that define an open-enrollment charter school, which is a "part of" the public school system of Texas pursuant to section 12.105, as a "public school" *per se. See C2 Constr.,* 288 S.W.3d at 36–37. Even if we were to accept Universal Academy's argument that an open-enrollment charter school is a "public school," that would not support the conclusion that an open-enrollment charter school is an "organ of government" and then, necessarily, a "governmental unit." No statutory provisions or case law include a "public school" within the meaning of the phrase "organ of government" so that it falls within the definition of "governmental unit."

Universal Academy's three-step argument reaches a conclusion unsupported by authority. First, Universal Academy argues an open-enrollment charter school is a "public school" for all purposes. The legislature does not state such a conclusion. Second, Universal Academy builds on its first argument by contending because an open-enrollment charter school is a "public school," it is an "organ of government." Yet, no statutory connection or definition so states. Third, Universal Academy says because of its conclusions as to the first and second steps, an open-enrollment charter school is a "governmental unit." Universal Academy fails to connect these three separate steps with any authority. We decline to fill the absence of statutory language or case law supporting Universal Academy's argument by judicial fiat.

Universal Academy's first argument offered in its letter brief, but not prior to our opinion in *C2 Construction,* is based on an interim report released in 2000 by the Public Education Committee of the Texas House of Representatives. *See* House Comm. on Public Educ., Interim Report to the 77th Legislature, 76th Leg., R.S. (2000). That report commented on the committee's investigation and evaluation of the charter school system in Texas. *See id.* Universal Academy contends the report demonstrates legislative intent to identify open-enrollment charter schools as "public schools." However, that identification will not fill the gap in Universal Academy's reasoning.

When we interpret a code enacted by the legislature, we read words and phrases in context and construe them according to the rules of grammar and common usage. *See* TEX. GOV'T CODE ANN. § 311.011(a). If a statute is unambiguous, rules of construction or other extrinsic aids cannot be

used to create ambiguity. *Fitzgerald,* 996 S.W.2d at 866; *St. Luke's Episcopal Hosp.,* 952 S.W.2d at 505; *RepublicBank Dallas, N.A.,* 691 S.W.2d at 607; *C2 Constr.,* 288 S.W.3d at 35–36; *Wilson N. Jones Mem'l Hosp.,* 266 S.W.3d at 56. Accordingly, we do not look to legislative history to determine legislative intent where no ambiguity exists. Universal Academy does not assert the applicable statutes in the education code are ambiguous and therefore, its reliance on the Interim Report as proof of its assertions is misplaced. Even if we were to conclude section 12.105 of the education code should be analyzed through use of the legislative documents Universal Academy cites as authority for its position, we would still reach the conclusion these statutes cannot be construed to define an open-enrollment charter school as a "governmental unit" despite Universal Academy's argument the report concludes an open-enrollment charter school is "part of the public school system of this state," or a "public school," demonstrating legislative intent. *See* Tex. Educ.Code Ann. § 12.105; Interim Report to the 77th Legislature at 5.

Universal Academy asserts the Interim Report shows the legislature recognized charter schools are public schools based upon the following language in the report:

> Policy makers should always be reminded that charter schools *are* public schools. TEC § 12.105(a).

Interim Report to the 77th Legislature at 5 (emphasis in original).

Again, urging its position, Universal Academy cites a second part of the Interim Report as follows:

> Charter schools are authorized by the State of Texas, receive state tax dollars, state textbooks, and countless other benefits of government status. They are protected by the doctrine of governmental immunity—a clear expression that

the sovereign power of the State of Texas is, in some measure, vested in these new public schools. TEC § 12.105(c). With limited exceptions, charters are subject to the same federal and state laws and rules that govern public schools. TEC § 12.103, § 12.104(b). . . . [T]hey remain subject to virtually the same TAAS testing and accountability system as all other Texas public schools. *Id.* However, Universal Academy omits to cite us statements we easily found in the Interim Report that demonstrate these citations are from one subcommittee report. *See id.* at 1. The entire report is comprised of four subcommittee reports. Only the subcommittee report cited applies to charter schools. Further, this subcommittee report was not approved by the nine members of the committee:

> The subcommittees have completed their hearings and investigations and have issued their respective reports. These reports are reflected in the following pages. The individual reports do not reflect the opinions of the entire committee and have not been approved by the entire committee.

*Id.* We find no support for Universal Academy's contention that a subcommittee report written by three members of a nine-member committee demonstrates a clear picture of legislative intent.

■ Next, Universal Academy offers another new authority and argument, the House Bill Analysis of House Bill 6 (H.B. 6), which reformed the education code after the Interim Report was issued. House Research Organization, Bill Conference Report Summary, Tex. H.B. 6, 77th Leg., R.S., at 14 (2001). Universal Academy tells us the House Bill Analysis reflects the supporters of the bill believed reforming charter school law was necessary because "[c]harter schools are public schools." *Id.; see also* Tex. Educ.Code Ann. § 12.105.

However, we do not look to bill analysis to determine legislative intent where no ambiguity exists. Nevertheless, even if we were to conclude section 12.105 should be analyzed through use of the bill analysis of H.B. 6, the statutes cannot be construed as argued by Universal Academy. Neither by itself, nor somehow in conjunction with the term "public school" can we say an open-enrollment charter school is a "governmental unit" for purposes of an interlocutory appeal. As Universal Academy acknowledges, the 77th Legislature enacted substantive revisions to the education code in 2001, including revisions to section 12.105, but nowhere was "governmental immunity" provided to open-enrollment charter schools. Section 12.1056, enacted in 2001, provided only immunity from liability "to the same extent as a school district." See Tex. Educ.Code Ann. § 12.1056. That section does not say open-enrollment charter schools and public school districts are the same. Also, section 12.1056 provides a different species of immunity from that asserted here. Section 12.1056 provides for immunity from liability, not immunity from suit. Universal Academy asserts only immunity from suit both here and in C2 Construction. Immunity from liability is not a jurisdictional matter, whereas immunity from suit is jurisdictional. See State v. Lueck, 290 S.W.3d 876, 880–81 (Tex.2009); Wichita Falls State Hosp. v. Taylor, 106 S.W.3d 692, 696 (Tex. 2003); Tara Partners, Ltd. v. City of S. Houston, 282 S.W.3d 564, 576 (Tex.App.-Houston [14th Dist.] 2009, no pet. h.).

Further, section 12.1053(b), also enacted in 2001, specifically limits open-enrollment charter schools respecting public purchasing and contracting issues by identifying specific provisions in the Texas Government Code and Texas Local Government Code in which open-enrollment charter schools are "considered to be" governmental entities, political subdivisions, or local governments. See Tex. Educ.Code Ann. § 12.1053(b).[1] Section 12.1053 does not identify an open-enrollment charter school as a "public school district," or even a "public school," but rather identifies statutory provisions in the law that apply to a school district and an open-enrollment charter school. See id. § 12.1053(c) ("To the extent consistent with this section, a requirement in a law listed in this section that applies to a school district ... applies to an open-enrollment charter school").

Also, Universal Academy cites only a part of the bill analysis of H.B. 6, without placing in context the contention that "[c]harter schools are public schools." The section cited by Universal Academy addresses specifically open meetings, public information, and local government records. The full paragraph is as follows:

**Open meetings, public information and local government records.**
Charter schools should be subject to the same rules and laws as regular public schools. Charter schools are public schools, and when public funds are spent or decisions are made about a public school, those actions should be transpar-

---

1. An open-enrollment charter school is considered to be:
    (1) a governmental entity for purposes of:
        (A) Subchapter D, Chapter 2252, Government Code [purchasing real property held in trust or selling real property to a trustee]; and
        (B) Subchapter B, Chapter 271, Local Government Code [competitive bidding on certain public works contracts];
    (2) a political subdivision for purposes of Subchapter A, Chapter 2254, Government Code [selecting and contracting for professional services]; and
    (3) a local government for purposes of Sections 2256.009–2256.016, Government Code [authorized investments of public funds].
Tex Educ.Code Ann. § 12.1053(b).

ent, with decisions being made in open meetings.

Tex. H.B. 6 at 14.

As additional authority, Universal Academy offers statutory construction by a state agency suggesting to us "[c]ourts are advised to give 'great weight' to the construction of statutes by agencies charged with their enforcement." Universal Academy opines our *C2 Construction* opinion is in error because it conflicts with the construction of the education code by the Commissioner of Education, the State Board of Education, and the Texas Education Agency. However, Universal Academy does not cite any applicable authority supporting its contention as to the construction of the statutes by the Texas Education Agency.

■ Universal Academy argues the Commissioner of Education and therefore, the State Board of Education, has defined open-enrollment charter schools as "Texas public schools" in section 100.1011(3) of the Texas Administrative Code. *See* 19 TEX. ADMIN. CODE § 100.1011(3). We give "serious consideration" to an agency's construction of a statute "so long as that construction is reasonable and does not contradict the plain language of the statute." *Tarrant Appraisal Dist. v. Moore,* 845 S.W.2d 820, 823 (Tex.1993); *see also CenterPoint Energy Houston Elec., LLC v. Gulf Coast Coal. of Cities,* 263 S.W.3d 448, 460 (Tex. App.-Austin 2008, pet. granted).

The definition in section 100.1011(3) provides:

> (3) Charter school—A Texas public school operated by a charter holder under an open-enrollment charter granted by the State Board of Education (SBOE) pursuant to TEC § 12.101.

19 TEX. ADMIN. CODE § 100.1011(3). The language in section 100.1011(3) does not identify an open-enrollment charter school as a "governmental unit," nor does it demonstrate a public school is a "governmental unit."

Finally, Universal Academy argues we erred in our *C2 Construction* opinion because it conflicts with the Eastland Court of Appeals's decision in *Rosencrans v. Altschuler,* where the court of appeals stated open-enrollment charter schools were "a new type of public school." *See Rosencrans,* 161 S.W.3d at 518. *Rosencrans* does not stand for the broad proposition Universal Academy asserts. That opinion relies on section 12.1056 of the education code, which specifically states that open-enrollment charter schools are immune from liability "to the same extent as a school district" in "matters related to the operation of an open-enrollment charter school." *See* TEX. EDUC.CODE ANN. § 12.1056. The court of appeals considered whether an open-enrollment charter school employee was immune from liability, but did not conclude an open-enrollment charter school was a public school or school district for other purposes, nor did it rely on sections other than section 12.1056 to reach its conclusions. Certainly, the court of appeals did not address any questions of immunity from suit, which is, as stated above, an immunity that is jurisdictional, expressly provided for by the legislature, and a different species of immunity from immunity from liability. *See Rosencrans,* 161 S.W.3d at 519–21.

■ Accordingly, we conclude the Texas Legislature did not define an open-enrollment charter school as an "organ of government" in order to include it within the definition of a "governmental unit" for purposes of an interlocutory appeal. We decline Universal Academy's invitation to fill voids in its argument by tying statutes together to synthesize jurisdiction in this case. Our interpretation of statutes "ex-

presses only the will of the makers of the law, not forced nor strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain." *RepublicBank Dallas,* 691 S.W.2d at 607; *see also St. Luke's Episcopal Hosp.,* 952 S.W.2d at 505; *Wilson N. Jones Mem'l Hosp.,* 266 S.W.3d at 56.

## II. CONCLUSION

An open-enrollment charter school is not a "governmental unit" for purposes of an interlocutory appeal. We conclude this Court does not have jurisdiction over Universal Academy's interlocutory appeal. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(8).

The trial court's denial of Universal Academy's plea to the jurisdiction is not an appealable interlocutory order. The appeal is dismissed for want of jurisdiction.