**AFFIRM; Opinion Filed November 18, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00482-CV

**PEGASUS SCHOOL OF LIBERAL ARTS & SCIENCES, Appellant**
**V.**
**KIMBERLY BALL-LOWDER, Appellee**

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 12-14617**

## OPINION

Before Justices Moseley, Lang, and Brown
Opinion by Justice Lang

This interlocutory appeal presents the question whether an open-enrollment charter school, which enjoys governmental immunity from suit, is a "local government entity" for which governmental immunity is waived respecting claims under the Texas Whistleblower Protection Act. *See LTTS Charter Sch., Inc. v. C2 Constr., Inc.*, 358 S.W.3d 725, 736 (Tex. App.—Dallas 2011, pet. denied) (*C2 Constr. III*); Tex. Gov't Code Ann. §§ 554.001–.010 (West 2012). In *Ohnesorge v. Winfree Academy Charter School*, 328 S.W.3d 654, 658 (Tex. App.—Dallas 2010, no pet.), we decided the Whistleblower Protection Act did not apply to charter schools. Subsequently, the Texas Supreme Court decided *LTTS Charter School, Inc. v. C2 Construction, Inc.*, 342 S.W.3d 73 (Tex. 2011) (*C2 Constr. II*), *opinion on remand*, *C2 Construction III*, 358 S.W.3d 725. Today we conclude that our reasoning in *Ohnesorge* is not consistent with *C2*

*Construction II* or *III*, and that the Whistleblower Protection Act applies to an open-enrollment charter school. Therefore, we affirm the trial court's order denying the plea to the jurisdiction of appellant Pegasus School of Liberal Arts and Sciences (Pegasus).

## I. FACTUAL AND PROCEDURAL CONTEXT

Pegasus is a private nonprofit corporation that operates an open-enrollment charter school in Dallas under a charter contract with the State of Texas. Appellee Kimberly Ball-Lowder was a teacher at Pegasus who complained about allegedly illegal activity there, first to school officials, and then to the State Auditor's Office, the Dallas Fire Department, the Texas Charter School Association, the Dallas County District Attorney, and the Texas Education Agency. Ball-Lowder was fired in August 2012. She brought suit for wrongful discharge under the Texas Whistleblower Protection Act, alleging in her petition that she was "terminated in retaliation for reporting a violation of law to an appropriate law enforcement authority." Pegasus denied Ball-Lowder's allegations.[1]

Pegasus filed a plea to the jurisdiction, asserting that Ball-Lowder's claims must be dismissed because the Whistleblower Protection Act is not applicable to a Texas open-enrollment charter school. Ball-Lowder contended in her response to the plea to the jurisdiction that *Ohnesorge* was wrongly decided and was overruled by the supreme court's decision in *C2 Construction II*. She argued that under *C2 Construction II*, open-enrollment charter schools are subject to the Whistleblower Protection Act. The trial court denied Pegasus's plea. This appeal followed.

---

[1] As Pegasus states in its appellant's brief, the facts surrounding Ball-Lowder's termination are not at issue in this interlocutory appeal. *See C2 Constr. III*, 358 S.W.3d at 732 (in performing de novo review of trial court's subject matter jurisdiction, court of appeals does not look to merits of case, but considers only pleadings and evidence relevant to jurisdictional inquiry).

## II. Interlocutory Appeal and Standard of Review

Under section 51.014(a)(8) of the Texas Civil Practice and Remedies Code, a person may appeal an interlocutory order of a district court that grants or denies a plea to the jurisdiction by a "governmental unit" as defined in section 101.001 of that code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2013) (appeal from interlocutory order); Tex. Civ. Prac. & Rem. Code Ann. § 101.001(3) (West Supp. 2013) (definitions). An open-enrollment charter school is a "governmental unit" that may bring an interlocutory appeal under section 51.014(a)(8). *C2 Constr. II*, 342 S.W.3d at 82. We review de novo a challenge to the trial court's subject matter jurisdiction. *City of Dallas v. Hughes*, 344 S.W.3d 549, 553 (Tex. App.—Dallas 2011, no pet.).

## III. Applicable Law Applied to the Whistleblower Protection Act

The Whistleblower Protection Act prohibits a "state or local government entity" from taking adverse personnel action against a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority. Tex. Gov't Code Ann. § 554.002(a); *see also Ohnesorge*, 328 S.W.3d at 655. The Act defines "local government entity" in section 554.001(2):

> (2) "Local governmental entity" means a political subdivision of the state, including a:
> (A) county;
> (B) municipality;
> (C) public school district; or
> (D) special-purpose district or authority.

The Act also contains a waiver of governmental immunity. Section 554.0035 of the Act, entitled "Waiver of Immunity," provides: "A public employee who alleges a violation of this chapter may sue the employing state or local government entity for the relief provided by this

–3–

chapter.  Sovereign immunity[2] is waived and abolished to the extent of liability for relief under this chapter for a violation of this chapter."  TEX. GOV'T CODE ANN. § 554.0035 (West 2012) (footnote added).

In *Ohnesorge*, we determined that even though an open-enrollment charter school may be a "public school," it was neither a "public school district" nor a "political subdivision of the state," and therefore was not a "local government entity" for purposes of section 554.001(2). *Ohnesorge*, 328 S.W.3d at 657.  We explained that "the legislature has specified the statutes under which an open-enrollment charter school is considered a 'governmental entity,' 'political subdivision,' 'local government,' or 'governmental body.'"  *Id.* at 658.[3]  We noted that none of these specific statutory provisions identified an open-enrollment charter school as a "local government entity" for purposes of the Whistleblower Protection Act.  *Id.*  Pegasus makes a similar argument here, urging that the legislature has "taken great pains to identify and enumerate only those statutes where the Legislature intended for open-enrollment charter schools . . . to be treated as public school districts or local governmental entities."[4]

---

[2] The terms "sovereign immunity" and "governmental immunity" involve "two distinct concepts." *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003).  Sovereign immunity refers to the State's immunity from suit and liability. *Id.*  Governmental immunity protects political subdivisions of the State, including counties, cities, and school districts. *Id.*  The supreme court in *Taylor* observed that despite the distinction, courts often use the two terms interchangeably. *Id.*  In this case, we interpret section 554.0035, in which the Legislature has chosen to use the term "sovereign immunity" as being expressly applicable to a "local government entity."  We need not decide whether in section 554.0035 the Legislature used the two concepts interchangeably as suggested in *Taylor*.  Rather, as discussed below, we follow the reasoning in *C2 Construction III* because the statute at issue in that case used similar language to that in section 554.0035 when declaring a waiver of "sovereign immunity" for a "local government entity."  *See* TEX. LOC. GOV'T CODE ANN. § 271.152 (West 2005).

[3] In our discussion, we examined section 12.105 of the Texas Education Code, providing that "[a]n open-enrollment charter school is part of the public school system of this state," and Texas Education Agency regulations defining a charter school as "[a] Texas public school operated by a charter holder under an open-enrollment charter."  TEX. EDUC. CODE ANN. § 12.105 (West 2012); 19 Tex. Admin. Code § 100.1011(3) (Tex. Educ. Agency, Definitions); *Ohnesorge*, 328 S.W.3d at 657.  We also considered statutory and constitutional provisions as well as case law relevant to the meaning of "public school district" and "political subdivision."  *See id.* (citing TEX. CONST. art. VII, § 3; TEX. EDUC. CODE ANN. §§ 11.002, .051, .303, .353; and *Guar. Petroleum Corp. v. Armstrong*, 609 S.W.2d 529, 531 (Tex. 1980)).  Also, we distinguished two opinions of the Texas Attorney General applying definitions of "political subdivision" and "independent school district" to charter schools in different contexts.  *See id.* (distinguishing Tex. Att'y Gen. Op. No. GA-0629 (2008) because it interpreted definition of "political subdivision" from government code, not Whistleblower Protection Act, and distinguishing Tex. Att'y Gen. Op. No. GA-0664 (2008) because it addressed unrelated issue of "a gratuitous payment of a county's public money to a charter school").  In light of the many statutory provisions specifically addressing their application to charter schools, we declined to apply the provisions of the Whistleblower Protection Act to a charter school in the absence of specific legislative direction to do so.  *See Ohnesorge*, 328 S.W.3d at 658.

[4] The dissenting justices in *C2 Construction II* also make this point, noting that section 12.1053 of the Texas Education Code "demonstrates a clear intent to only apply very specific definitions and provisions from the Government Code and the Local Government Code to charter schools."  *C2 Constr. II*, 342 S.W.3d at 85 (Guzman, J., dissenting).

In *Ohnesorge*, we also relied on our opinion in *LTTS Charter School, Inc. v. C2 Construction, Inc.*, 288 S.W.3d 31 (Tex. App.—Dallas 2009) (*C2 Constr. I*), *reversed*, *C2 Constr. II*, 342 S.W.3d 73, *opinion on remand*, *C2 Constr. III*, 358 S.W.3d 725. We cited *C2 Construction I* for the proposition that section 12.105 of the Texas Education Code "does not establish an open-enrollment charter school as being the same as a school district" or a "'political subdivision' in all situations." *See Ohnesorge*, 328 S.W.3d at 656–57, 658 (quoting *C2 Constr. I*, 288 S.W.3d at 34, 35). However, our judgment in *C2 Construction I* was reversed by the supreme court after we decided *Ohnesorge*. *See generally C2 Constr. II*, 342 S.W.3d at 73–82 (majority opinion).

The *C2 Construction* cases did not arise under the Whistleblower Protection Act. Instead, a construction company brought suit against an open-enrollment charter school for sums allegedly due for construction work. *C2 Constr. I*, 288 S.W.3d at 32. The supreme court framed the "narrow issue" presented, and the answer: "Is an open-enrollment charter school a 'governmental unit' as defined in Section 101.001(3)(D) of the Tort Claims Act and thus able to take an interlocutory appeal from a trial court's denial of its plea to the jurisdiction? We answer yes." *C2 Constr. II*, 342 S.W.3d at 74–75 (footnotes omitted).

The definition of "governmental unit" in the Tort Claims Act at issue in *C2 Construction II* is different from the definition of "local government entity" in the Whistleblower Protection Act. Section 101.001(3) of the Tort Claims Act "states a four-part definition of 'governmental unit,'" including a "broad," "catch-all" provision in subsection (D). *C2 Constr. II*, 342 S.W.3d at 75–76. Subsection (D) provides:

> (D) any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(D) (West Supp. 2013) (quoted in *C2 Constr. II*, 342 S.W.3d at 76). The court in *C2 Construction II* concluded that both the "status" and the "authority" of open-enrollment charter schools were "derived from . . . laws passed by the legislature," so that the charter school in question was a "governmental unit" under subsection (D). *See C2 Constr. II*, 342 S.W.3d at 76–78. Therefore, the supreme court determined this court had interlocutory appeal jurisdiction of the trial court's ruling on the charter school's plea to the jurisdiction. *Id.*[5]

After the *C2 Construction II* court determined we had jurisdiction to hear the charter school's interlocutory appeal, on remand we considered the merits of the charter school's plea to the jurisdiction. *See C2 Constr. III*, 358 S.W.3d at 732. The merits included the question whether the charter school had immunity from suit. *Id.* at 735. Although the supreme court stated that it "reserved judgment" on the question of immunity from suit in *C2 Construction II*, the supreme court's opinion included a lengthy footnote analyzing an argument made by the Solicitor General regarding the immunity of charter schools from suit. *C2 Constr. II*, 342 S.W.3d at 78 n. 44. The Solicitor General reasoned that if open-enrollment charter schools were not "governmental units" under the Tort Claims Act, they would enjoy "greater tort immunity than cities, counties, school districts, and other purely governmental entities." *Id.* The court noted that it "would seem odd" for lawmakers to "imbue open-enrollment charter schools with [such] greater tort immunity . . . . *Id.*[6]

---

[5] We note that the *C2 Construction II* court did not decide whether an open-enrollment charter school met the definition of a "governmental unit" in subsection (B) of section 101.001(3). *See id.* at 76 n.13 ("We need not discuss Subsection (3)(B) since we hold that open-enrollment charters fall under Subsection (3)(D)."). Unlike the broad catch-all language in subsection (D), subsection (B) lists specific terms such as "political subdivision" and "school district," similar to the terms used in the Whistleblower Protection Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(B) (West Supp. 2013). The Whistleblower Protection Act does not contain a catch-all provision similar to subsection (D). Nonetheless, as explained below, we reasoned in *C2 Construction III* that a charter school fit within definitions of "local governmental entity," "political subdivision," and "public school district" in the similarly-worded provisions of section 271.151 of the Local Government Code, *see C2 Constr. II*, 358 S.W.3d at 735–36, 741–42, and that reasoning is equally applicable here.

[6] The court's discussion in its entirety is as follows:

In considering whether the charter school had immunity from suit, we heeded the supreme court's detailed review of the numerous statutes conferring "governmental 'status and authority'" on open-enrollment charter schools as well as the discussion in footnote 44. *See C2 Constr. III*, 358 S.W.3d at 735 (discussing *C2 Constr. II*, 342 S.W.3d at 77–78). A critical conclusion of the supreme court that directed our decision was that the status of open-enrollment charter schools "as 'part of the public school system of the state'—and their authority to wield 'the powers granted to [traditional public] schools' and to receive and spend state tax dollars (and in many ways to function as a government entity)—derive wholly from the comprehensive statutory regime described above." *C2 Constr. II*, 342 S.W.3d at 78 (citing and quoting TEX. EDUC. CODE §§ 12.105, 12.104(a), 12.106, 12.107, and 12.1053). Accordingly, we stated that "[t]hose same attributes and circumstances support a conclusion of governmental immunity." *C2 Constr. III*, 358 S.W.3d at 735. We concluded that "based on the supreme court's analysis in [*C2 Construction II*] . . . open-enrollment charter schools have governmental immunity from suit." *Id.* at 736.

---

We leave undecided the separate issue of whether Universal Academy is immune from suit. The Solicitor General of Texas—responding to our request for briefing from the State—contends that denying "governmental unit" status "would make little sense because the Legislature has expressly granted open-enrollment charter schools immunity from liability." It is true that Section 12.1056 of the Education Code, while not mentioning immunity from suit, specifies that open-enrollment charter schools are "immune from liability to the same extent as a school district." TEX. EDUC. CODE § 12.1056. Our holding today that Universal Academy is a "governmental unit" under the Tort Claims Act entitled to take an interlocutory appeal does not turn on Section 12.1056's mention of immunity from liability. While that provision, like several other Education Code provisions, implies legislative recognition of "governmental unit" status for open-enrollment charter schools, we reserve judgment on: (1) whether Universal Academy, while entitled to take an interlocutory appeal, also has immunity from suit; and more fundamentally (2) whether the Legislature in fact has the authority to confer (as opposed to waive) immunity, a common-law creature traditionally delimited by the judiciary. That said, the Solicitor General pivots on Section 12.1056's grant of immunity from liability to argue that if open-enrollment charter schools are *not* governmental units under the Tort Claims Act, then the Act does not apply. And if the Act does not apply, then an open-enrollment charter school's immunity from tort liability is never waived. And if immunity is never waived, then Section 12.1056 would suggest that open-enrollment charter schools are immune from all tort liability, unique among all governmental entities in the State. The Solicitor General sees this as an illogical and surely unintended outcome—traditional public schools exposed to tort liability but charter schools exempt from it. We do not consider today the scope or effect of Section 12.1056, but assuming *arguendo* the Legislature can grant immunity from liability, it would seem odd for lawmakers to imbue open-enrollment charter schools with greater tort immunity than cities, counties, school districts, and other purely governmental entities. Again, we reserve judgment on Universal's immunity from suit, an issue not before us.

*C2 Constr. II*, 342 S.W.3d at 78 n.44 (emphasis in original).

We then proceeded to consider the question whether the charter school's governmental immunity had been waived by the legislature. The statutory provision at issue on remand in *C2 Construction III* was neither the Tort Claims Act as in *C2 Construction II*, nor the Whistleblower Protection Act as in *Ohnesorge*. Instead, the provision at issue was section 271.152 of the Local Government Code. *See* TEX. LOC. GOV'T CODE ANN. § 271.152 (West 2005) (entitled "Waiver of Immunity to Suit for Certain Claims"). Section 271.152 provides that a "local governmental entity" waives "sovereign immunity to suit" for the purpose of adjudicating a claim for breach of contract where the contract meets the requirements of Subchapter I of Chapter 271 of the Local Government Code. *See* TEX. LOC. GOV'T CODE ANN. § 271.152. Subchapter I[7] contains its own definition of "local governmental entity" in section 271.151(3):

> (3) "Local governmental entity" means a political subdivision of this state . . . including a: . . .
>
> (B) public school district and junior college district . . . .

TEX. LOC. GOV'T CODE ANN. § 271.151(3) (West 2005). Accordingly, we were required to decide whether an open-enrollment charter school was a "political subdivision" or "public school district" for purposes of the definition of "local government entity" under section 271.151(3) in order to answer the question whether the legislature had waived the immunity of a charter school regarding the breach of contract claim before the court. *C2 Constr. III*, 358 S.W.3d at 734.

We concluded an open-enrollment charter school is a "local government entity" for purposes of the waiver of immunity in section 271.152. *Id.* at 742; *see also LTTS Charter Sch., Inc. v. Palasota*, 362 S.W.3d 202, 210 (Tex. App.—Dallas 2012, no pet.) (following *C2 Constr.*

---

[7] The Education Code expressly provides that an open-enrollment charter school is a "governmental entity" for purposes of Subchapter B of Chapter 21 of the Local Government Code (regarding competitive bidding on certain public works contracts), but does not mention Subchapter I of the same chapter where the waiver of immunity is found. *See* TEX. EDUC. CODE ANN. § 12.1053(b)(1)(B) (West 2012) ("An open-enrollment charter school is considered to be . . . a governmental entity for purposes of . . . Subchapter B, Chapter 271, Local Government Code . . . ."). The same section of the Education Code provides that an open-enrollment charter school is considered to be a "political subdivision" for purposes of Subchapter A, Chapter 2254 of the Government Code, the Professional Services Procurement Act. *See* TEX. EDUC. CODE ANN. § 12.1053(b)(2) (West 2012).

*III*). We reasoned that if an open-enrollment charter school was not a "local government entity" for purposes of section 271.152, then its immunity would never be waived in breach of contract actions, and "that result would seem odd." *Id.* at 741 (citing *C2 Constr. II*, 342 S.W.3d at 78 n.44). We stated, "[b]ecause the consequences of concluding open-enrollment charter schools are not 'local governmental entities' under section 271.152 would be neither just nor reasonable under the logic expressed by the supreme court, we decline to do so." *Id.* at 742. However, we concluded there was no waiver of governmental immunity as to C2 Construction's claim for breach of contract because the provisions of the contract at issue did not satisfy the requirements of section 271.152 of the Local Government Code. *Id.* at 744. That history brings us to the present appeal.

Although here we interpret the Whistleblower Protection Act rather than the Local Government Code, the pertinent statutory provisions in question are almost identical. *Compare* TEX. GOV'T CODE ANN. § 554.002(a) (Whistleblower Protection Act) ("'Local governmental entity' means a political subdivision of the state, including a . . . public school district"), *with* TEX. LOC. GOV'T CODE ANN. § 271.151(3) ("'Local governmental entity' means a political subdivision of this state . . . including a . . . public school district"). The "attributes and circumstances" of open-enrollment charter schools we relied on in *C2 Construction III* to support our conclusions regarding immunity and applicability of the waiver of immunity under the Local Government Code are equally relevant and applicable here. *See C2 Constr. III*, 358 S.W.3d at 736–37, 741 (open-enrollment charter schools are part of public school system, have responsibility for implementing state's school system of public education, and are subject to state laws and rules governing public schools, among other factors). An "odd result" would occur if an open-enrollment charter school, which is "immune from liability to the same extent as a school district," *see* TEX. EDUC. CODE ANN. § 12.1056, and is "part of the public school system

of this state," *id.* § 12.105, is not a "local governmental entity" subject to the waiver of immunity in section 554.0035 of the Whistleblower Protection Act, and would enjoy greater immunity than "school districts and other purely governmental entities." *See* TEX. GOV'T CODE ANN. § 554.0035 (quoted in note 2 above); *C2 Constr. II*, 342 S.W.3d at 78 n.44; *C2 Constr. III*, 358 S.W.3d at 741. Accordingly, we conclude that an open-enrollment charter school is a "local government entity" for purposes of the applicability of the Whistleblower Protection Act. We decide against Pegasus on its sole issue.

## IV. THE PEGASUS "PANDORA'S BOX" CONTENTION

Pegasus argues that "a decision that charter schools are subject to the [Whistleblower Protection] Act will defeat the clear legislative intent that they not be under the Act, and will additionally open a Pandora's Box with respect to what other laws these (and other) private corporations may be subject to . . . ." Our holding here is not so broad. We are not presented with the question whether an open-enrollment charter school is a "governmental entity" for all purposes under every statute and regulation utilizing that term.[8] We conclude only that the Whistleblower Protection Act's definition of "local government entity" must be interpreted to include an open-enrollment charter school, consistent with our interpretation of the language in section 271.151(3) of the Local Government Code as determined in *C2 Construction III*.

---

[8] In the *C2 Construction II* dissenting opinion, for example, Justice Guzman noted that in four statutes specifically designated as applicable to open-enrollment charter schools, none of the definitions of "governmental entity," "political subdivision," or "local government" was the same as the definition in the Tort Claims Act at issue. *See C2 Constr. II*, 342 S.W.3d at 85 (Guzman, J., dissenting). The majority in turn described the "all-encompassing legislative regime that called charter schools into existence and that defines their role in our public-education system." *Id.* at 81–82. The interpretation of any of these statutory provisions will require, as in any other case, that courts "honor the Legislature's expressed intent" by considering the "words the Legislature chose" and the "surrounding statutory landscape" for the particular statute at issue. *Id.* at 75.

We affirm the trial court's order denying the plea to the jurisdiction.

/Douglas S. Lang/

DOUGLAS S. LANG
JUSTICE

130482F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

PEGASUS SCHOOL OF LIBERAL ARTS
& SCIENCES, Appellant

No. 05-13-00482-CV      V.

KIMBERLY BALL-LOWDER, Appellee

On Appeal from the 191st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 12-14617.
Opinion delivered by Justice Lang. Justices
Moseley and Brown participating.

In accordance with this Court's opinion of this date, the order of the trial court denying the plea to the jurisdiction of appellant Pegasus School of Liberal Arts & Sciences is **AFFIRMED**.

It is **ORDERED** that appellee Kimberly Ball-Lowder recover her costs of this appeal from appellant Pegasus School of Liberal Arts & Sciences.

Judgment entered this 18th day of November, 2013.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE