THE CITY OF HOUSTON, Appellant,

v.

CLEAR CHANNEL OUTDOOR,
INC., Appellee.

No. 14–07–00084–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

July 31, 2007.

Rehearing Overruled Sept. 13, 2007.

Bertrand L. Pourteau, II, Houston, for appellant.

Bradley Eugene MCain, Scott James Conrad, Dallas, for appellee.

Panel consists of Chief Justice HEDGES and Justices HUDSON and GUZMAN.

## OPINION

EVA M. GUZMAN, Justice.

Appellant, the City of Houston, filed a plea to the jurisdiction asserting that a contract to purchase a billboard from ap-

pellee Clear Channel Outdoor, Inc. ("Clear Channel") was not properly executed because it was not signed by the mayor and the controller as required by the Houston City Charter. Thus, the City argues, the contract does not fall within the limited waiver of governmental immunity for breach-of-contract claims as set forth in section 271.152 of the Texas Local Government Code. *See* TEX. LOC. GOV'T CODE ANN. § 271.152 (Vernon 2005). The trial court denied the plea, and we affirm the trial court's ruling.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2002, the City was engaged in a street repair project. In connection with this project, Clear Channel received a letter dated January 8, 2002 from the engineering firm of Lockwood, Andrews & Newman, Inc. ("LAN") on the City's behalf. The letter, which bears the heading "CONSULTANT TO THE CITY OF HOUSTON," provides in pertinent part:

> The City of Houston Department of Public Works and Engineering, Real Estate Branch has been authorized by the proper authorities to acquire the above[-]captioned easement which is needed by the City for the ELLA BOULEVARD RECONSTRUCTION PROJECT ALONG WHEATLEY (from Pinemont to West Little York).
>
> Attached are the original and two (2) copies of the City of Houston Easement Purchase Agreement.... This is an offer to purchase the double[-]faced 6' X 12' billboard sign that you own which is located on the subject property. The sign must be acquired for construction purposes. As shown on this agreement, the City's offer is in the amount of $21,600.00. This offer, of course, is be-

> ing made subject to City Council approval.... This office will enter into negotiations and will make a separate offer to the fee owners; however, the offer to you is contingent upon our successfully negotiating with the fee owners.[1] In the event negotiations are unsuccessful in acquiring from both the owner and the lessee, then it may be necessary to acquire this parcel through eminent domain proceedings.
>
> Also attached is a copy of the appraisal report ... obtained by the City for this parcel. This information is provided to you in accordance with Chapter 21, Subchapter B, Section 21.0111 of the Property Code.

Enclosed with the letter was a document entitled, "City of Houston Easement Purchase Agreement" ("Purchase Agreement") providing that, "FOR THE CONSIDERATION OF $21,600.00 SUBJECT TO CITY COUNCIL APPROVAL, GRANTOR HEREIN AGREES TO CONVEY THE BILLBOARD DESCRIBED BELOW TO THE CITY OF HOUSTON." The agreement was signed by Marty Kobs, an employee of LAN. On January 9, 2002, Michelle Costa, president of Clear Channel's Houston Division, signed and returned the Purchase Agreement.

On April 10, 2002, Mayor Lee Brown presided over a Houston City Council meeting at which the Council considered Motion 2002–0445 ("the Motion"), recommending that the City be authorized to condemn the property, including the billboard. The Motion provided, in pertinent part:

> **RECOMMENDATION: (Summary)**
> Authority be given through Council Motion to CONDEMN Parcel A99–105

---

**1.** The parties do not contend that the City failed to acquire the property from the fee owners.

**Amount and Source of Funding:** To be determined by CONDEMNATION proceedings Street & Bridge Consolidated Construction Fund 437, Covered under Blanket Appropriation Ordinance 2001–553 [signature illegible]

**SPECIFIC EXPLANATION:**

The ELLA BOULEVARD (WHEATLEY) PAVING PROJECT (from Pinemont to West Little York) provides for right-of-way acquisition, engineering, and construction of two 24–foot wide concrete roads with esplanade, curbs, sidewalks, and necessary underground utilities. These improvements will upgrade the existing roadway to major thoroughfare standards and improve traffic flow/circulation and drainage in the service area. This transaction involves the right-of-way acquisition of a rectangular tract of land located along the east line of Wheatley Street, being approximately 72 feet in length, and approximately 42 feet in width, located at the northeast corner of Wheatley Street and Homer Street.

CONDEMNATION:

The City desires to acquire 3,023 square feet out of an otherwise vacant residential property improved with a billboard in the taking area. Condemnation is being recommended to clear title to this parcel due to an outstanding lien.... This valuation was reviewed and recommended for approval by a senior staff appraiser of this department. The breakdown is as follows:

. . .

LEASEHOLD INTEREST–OFF–PREMISES SIGN:

Double faced 6' X 12' X 12' high outdoor off-premises advertising sign.... $21,600.00

The double faced 6' X 12' X 12' high outdoor off-premises advertising sign will not be relocated. The sign will be purchased and then demolished at the time of construction.

The Motion passed with no dissenting votes.

Clear Channel subsequently received a letter dated June 11, 2002 from the City of Houston, Public Works and Engineering Department, in which the Assistant Director of the Real Estate Department of Public Works and Engineering Department wrote:

Reference is made to the offer dated January 8, 2002 (Attachment 1) regarding the two[-]faced off-premise billboard sign located on this parcel of land. Since this sign is not legally permissible and the city is not required or obligated to compensate an owner for an illegal improvement, we are hereby withdrawing our offer. You should therefore disregard any prior correspondence concerning this offer.

Clear Channel sued the City for breach of contract, and the City responded with a plea to the jurisdiction asserting immunity from suit. The trial court overruled the plea, and the City brought an interlocutory appeal. *City of Houston v. Clear Channel Outdoor, Inc.,* 161 S.W.3d 3 (Tex.App.-Houston [14th Dist.] 2004), *rev'd,* 197 S.W.3d 386 (Tex.2006) (per curiam). While the case was on appeal, the Legislature enacted sections 271.151–.160 of the Local Government Code. Under the terms of this legislation, local government entities waive immunity from suit for certain claims. The Texas Supreme Court reversed and remanded the case to give Clear Channel the opportunity to present arguments under the new legislation.

On remand, the City filed its second plea to the jurisdiction asserting immunity from suit. The trial court denied the second

445

plea, and this agreed interlocutory appeal ensued.[2]

## II. Issue Presented

In a single issue, the City contends the trial court erred in denying the City's second plea to the jurisdiction.[3]

## III. Standard Of Review

The plaintiff has the burden to plead facts affirmatively showing that the trial court has subject matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993). Because jurisdiction is a question of law, the trial court's ruling on a plea to the jurisdiction is subject to de novo review. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998). In performing this review, we do not consider the merits of the plaintiff's case, but focus instead on the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). We construe the pleadings liberally in favor of conferring jurisdiction. *Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex.2002)(per curiam). Nevertheless, a waiver of immunity must be clear and unambiguous. *Tooke v. City of Mexia*, 197 S.W.3d 325, 332–33 (Tex.2006). In sum, we determine whether the plaintiff has pleaded a claim for which a governmental unit has waived immunity by reading the pleadings broadly and the alleged waiver narrowly.

## IV. Analysis

Pursuant to section 271.152 of the Texas Local Government Code,

A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

TEX. LOC. GOV'T CODE ANN. § 271.152 (Vernon 2005).[4] According to the definitional provisions of Section 271.151, a "[c]ontract subject to this subchapter" means a "written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." *Id.* § 271.151(2).[5] Contracts may consist of multiple documents. *The Courage Co., L.L.C. v. The Chemshare Corp.*, 93 S.W.3d 323, 333 (Tex.App.-Houston [14th Dist.] 2002, no pet.). We review contracts as a whole, and consider writings together

---

2. After the second plea was filed but before it was heard, Clear Channel amended its petition a third time to add federal takings claims and a claim for tortious interference. That plea has not yet been heard, and those claims are not before us.

3. The full title of the document is Houston's Second Plea to the Jurisdiction and, in the Alternative, No–Evidence and Traditional Motions for Summary Judgment. Our references to the second plea to the jurisdiction encompass these alternative motions for summary judgment.

4. This section applies to claims that arise before its effective date of September 1, 2005:

only if sovereign immunity has not been waived with respect to the claim before the effective date of this Act. A claim that arises under a contract executed before the effective date of this Act and with respect to which sovereign immunity has been waived is governed by the law in effect on the date the contract was executed, and the former law is continued in effect for that purpose. Act of May 23, 2005, 79th Leg., R.S., ch. 604, § 2, 2005 Tex. Gen. Laws 1548, 1549.

5. A "local governmental entity" includes a municipality. *Id.* § 271.151(3)(A).

if they pertain to the same transaction, even if they were executed at different times. *City of Keller v. Wilson*, 168 S.W.3d 802, 811 (Tex.2005).

■ The City contends that the Purchase Agreement was not "properly executed on behalf of the local governmental entity" because it was not signed by the mayor and the city controller. In support of this argument, the City relies on the following provision of the Houston City Charter:

> No contract shall be entered into until after an appropriation has been made therefore, nor in excess of the amount appropriated, *and no contract shall be binding upon the city unless it has been signed by the mayor and countersigned by the controller*, and the expense thereof charged to the proper appropriation, and whenever the contract charged to any appropriation equals the amount of said appropriation, no further contracts shall be countersigned by the controller.

CITY OF HOUSTON CHARTER, art. II, § 19 (Act of March 18, 1905, 29th Leg., R.S., ch. 17, art. II, § 1, 1905 Tex. Spec. Laws 131, 131, *amended* Jan. 27, 1968, *amended* Aug. 14, 1982) (emphasis added).

Clear Channel responds that these requirements do not apply to this case, and points to another provision of the City's Charter:

> Every ordinance, resolution or motion of the City Council shall, before it takes effect, be presented to the Mayor for its approval and signature. If the Mayor shall fail to sign any ordinance, resolution or motion within five days after adoption, it shall nevertheless be in full force and effect as if he had signed the same.

*Id.*, art. VI, § 6 (*added by amendment* August 15, 1942). Here, the City passed the Motion to condemn the property, and although there is no indication that the Motion was signed by the mayor, it was nevertheless in full force and effect as if it had been signed.

The adoption of this Motion was the last step needed to complete the written contract between the parties. The Purchase Agreement set forth the essential terms of the contract, and it was executed by "Marty Kobs, ROW Project Manager, Lockwood, Andrews & Newman, Inc., Consultant to the City of Houston." It is undisputed that LAN purported to act on the City's behalf, and the City does not contend that LAN's actions were unauthorized. We further note that Section 271.152 does not require that the contract at issue be properly executed by the governmental entity; rather, the requirements of the statute are satisfied if the contract was properly executed *on behalf of* the entity. Moreover, the City stated in its letter of June 11, 2002 that "we are hereby withdrawing our offer." Thus, it acknowledges that the signer executed the Purchase Agreement on the City's behalf. The City's contention that the signatures of the mayor and the city controller are required arguably conflates the issue of whether the contract is binding under the charter—a question that goes to the merits of the case—with the issue of whether it was properly executed on the City's behalf.[6]

■ The City argues that the Motion approved a recommendation to condemn the property, but did not approve or authorize a contract. Condemnation, however, is not required when the parties agree on the amount to be paid in damages for the property. Tex. Prop.Code Ann.

---

6. The City does not contend that LAN lacked actual or apparent authority to extend the purchase offer to Clear Channel, or that LAN's actions were otherwise improper.

§ 21.012(a) (Vernon 2004). Here, Clear Channel had already accepted the City's conditional offer to pay $21,600.00 for the billboard, subject to City Council approval; thus, there was no need to litigate damages. The Motion also contains the remaining essential terms of the contract, and points out that the valuation of $21,600.00 for the billboard "was reviewed and recommended for approval by a senior staff appraiser" of the Department of Public Works and Engineering.

## V. CONCLUSION

We conclude that, taken together, the Purchase Agreement and the Motion constitute a written contract as that term is used in section 271.151 of the Local Government Code. On the record before us, we overrule the sole issue presented by the City and hold that the trial court did not err in denying the City's plea to the jurisdiction.