**LTTS CHARTER SCHOOL, INC. d/b/a Universal Academy, Appellant,**

v.

**C2 CONSTRUCTION, INC., Appellee.**

No. 05–07–01469–CV.

Court of Appeals of Texas, Dallas.

Oct. 28, 2011.

Rehearing Overruled Feb. 29, 2012.

Thomas Anthony Fuller, The Fuller Law Group, Arlington, for Appellant.

Brian W. Erikson, Quilling, Selander, Lownds, Winslett & Moser, P.C., Timothy A. York, Quilling, Selander, Cummiskey & Lownds, PC, Dallas, for Appellee.

Before Justices BRIDGES, FITZGERALD, and LANG.

## OPINION ON REMAND

Opinion By Justice LANG.

In this interlocutory appeal, LTTS Charter School, Inc. d/b/a Universal Academy ("Universal Academy") appeals the trial court's denial of its plea to the jurisdiction based on immunity from suit. On original submission, this Court concluded it did not have jurisdiction over the interlocutory appeal because Universal Academy, which is an open-enrollment charter school, was not a "governmental unit" for purposes of an interlocutory appeal under section 51.014(a)(8) of the Texas Civil Practice and Remedies Code. *See LTTS Charter Sch., Inc. v. C2 Constr., Inc.,* 288 S.W.3d 31 (Tex.App.-Dallas 2009), *rev'd,* 342 S.W.3d 73 (Tex.2011); Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(8) (West 2008).

The Texas Supreme Court reversed this Court's judgment and remanded the case to this Court for further proceedings. *LTTS Charter Sch.*, 342 S.W.3d at 73.

We construe Universal Academy's three issues on appeal to assert (1) the trial court erred by denying Universal Academy's plea to the jurisdiction; (2) even if Universal Academy waived its immunity from suit by filing counterclaims, Universal Academy subsequently dismissed those counterclaims and thereby regained such immunity; and (3) the facts of this case do not meet the requirements for waiver of immunity by entry into a contract pursuant to chapter 271, subchapter I, of the Texas Local Government Code. *See* Tex. Loc. Gov't Code Ann. §§ 271.151–.160 (West 2005 & Supp. 2010) (titled "Adjudication of Claims Arising Under Written Contracts With Local Government Entities").

Appellee C2 Construction, Inc. ("C2 Construction") raises five "cross points," in which it argues (1) Universal Academy was performing, in part, a proprietary function, and any immunity of Universal Academy does not apply to such functions; (2) immunity from suit for charter schools is precluded by the fact that immunity from liability was granted by the Legislature's enactment of section 12.1056 of the education code, *see* Tex. Educ.Code Ann. § 12.1056 (West 2006); (3) the evidence raises a fact issue as to whether any immunity from suit as to C2 Construction's claims was waived pursuant to Texas Local Government Code section 271.152; (4) Texas Education Code section 12.1056 violates the "Open Courts Doctrine" to the extent it confers immunity from suit on Universal Academy; and (5) even if Universal Academy has immunity from suit, the trial court has jurisdiction to hear C2 Construction's claim under section 1983 of

title 42 of the United States Code. *See* 42 U.S.C.A. § 1983 (West, Westlaw through Oct. 28, 2011).

We affirm the trial court's order, in part, and reverse, in part. Further, we render judgment granting Universal Academy's plea to the jurisdiction, in part, and remand this case to the trial court for further proceedings in accordance with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Universal Academy retained C2 Construction to construct school facilities at a site leased by Universal Academy in Dallas County (the "Project"). After construction proceeded for several months, a dispute arose over the amount owed by Universal Academy to C2 Construction.

On April 4, 2006, C2 Construction filed this lawsuit. In its last-filed petition at the time of the challenged interlocutory order, C2 Construction asserted claims against Universal Academy and Reklaw Partnership, Inc. ("Reklaw"),[1] the owner of the site leased by Universal Academy, for (1) breach of contract, (2) quantum meruit and unjust enrichment, (3) "enforcement of lien affidavit," (4) interest, and (5) attorney's fees. Additionally, C2 Construction asserted a claim against Universal Academy for violation of section 1983 based on Universal Academy's alleged "deprivation under color of Texas law of C2's property and other rights afforded to it by ... federal and Texas laws."

Universal Academy filed a general denial answer in which it asserted several affirmative defenses, including sovereign immunity. Additionally, on that same date, Universal Academy filed counterclaims against C2 Construction for breach of con-

---

1. Reklaw is not a party to this appeal.

tract, breach of warranty, negligence, and declaratory relief.

Next, Universal Academy filed (1) a notice of non-suit without prejudice as to its counterclaims and (2) a plea to the jurisdiction on the grounds that Universal Academy is immune from suit on the claims at issue "based on the doctrine of sovereign immunity" and such immunity has not been waived by Universal Academy. In its plea to the jurisdiction, Universal Academy argued, in part, (1) "charter schools are granted the same governmental immunities as public school districts," including immunity from suit; (2) any immunity waived by Universal Academy as a result of its counterclaims was restored when such counterclaims were withdrawn; and (3) the criteria for waiver of immunity by written contract under local government code section 271.152 have not been met in this case.

C2 Construction responded, contending, *inter alia,* (1) the only immunity Universal Academy has is that granted by the Legislature, i.e. immunity from liability pursuant to education code section 12.1056; (2) any immunity Universal Academy had was waived as a result of Universal Academy's contracting with C2 Construction for the work at issue, pursuant to section 271.152, and/or by Universal Academy's filing of counterclaims in this case; (3) Universal Academy "has no sovereign immunity concerning the space that Universal has subleased to a private school that Universal controls"; (4) if Universal Academy is entitled to immunity under education code section 12.1056, "such statute violates the Open Courts doctrine of the Texas Constitution and should be stricken"; and (5) C2 Construction's section 1983 claim was not challenged by Universal Academy in its

plea to the jurisdiction and therefore could not be disposed of by granting that plea.

Subsequently, Universal Academy filed a supplement to its plea to the jurisdiction in which it asserted C2 Construction's section 1983 claim "fails" on the grounds that (1) C2 Construction "has not asserted what federal right has been violated" and (2) "[t]here is no federal right that could have been violated in this case" because "[t]his is a breach of contract case which cannot give rise to a 42 U.S.C. § 1983 claim."[2]

Following a hearing, Universal Academy's plea to the jurisdiction was denied by the trial court. Universal Academy appealed to this Court pursuant to section 51.014(a)(8). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (providing for appeal of an interlocutory order that "denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001"). This Court dismissed Universal Academy's interlocutory appeal, concluding Universal Academy was not a "governmental unit" as that term is defined in civil practice and remedies code section 101.001, a provision of the Texas Tort Claims Act. *See id.* § 101.001 (West 2011).

After granting Universal Academy's petition for review, the Texas Supreme Court stated the "narrow issue" to be addressed as follows: "Is an open-enrollment charter school a 'governmental unit' as defined in Section 101.001(3)(D) of the Tort Claims Act and thus able to take an interlocutory appeal from a trial court's denial of its plea to the jurisdiction?" *LTTS Charter Sch.,* 342 S.W.3d at 74–75 (footnotes omitted). The supreme court stated that section 101.001(3)(D) provides a broad definition of "governmental unit" that includes "any other institution, agency, or organ of government the status and authority of which

---

**2.** C2 Construction filed a motion to strike Universal Academy's supplemental plea to the jurisdiction on October 1, 2007. The record is silent as to the disposition of that motion.

are derived from the Constitution of Texas or from laws passed by the Legislature under the constitution." *Id.* at 75–76 (quoting TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(3)(D)). Based on its analysis of that definition and several other statutory provisions, the supreme court concluded it was "confident that the Legislature considers Universal Academy to be an 'institution, agency, or organ of government' under the Tort Claims Act and thus entitled to take an interlocutory appeal" pursuant to section 51.014(a)(8). *Id.* at 78. Accordingly, the supreme court reversed this Court's judgment and remanded the case to this Court for consideration of the merits of the issues raised in the interlocutory appeal. *Id.* at 82.

## II. DENIAL OF UNIVERSAL ACADEMY'S PLEA TO THE JURISDICTION

### A. *Standard of Review and Applicable Law*

Whether a trial court has subject matter jurisdiction is a matter of law that is reviewed de novo. *See Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226, 228 (Tex.2004); *Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 855 (Tex.2002); *Robinson v. Neeley,* 192 S.W.3d 904, 907 (Tex.App.-Dallas 2006, no pet.). In performing this review, an appellate court does not look to the merits of the case, but considers only the pleadings and evidence relevant to the jurisdictional inquiry. *See Miranda,* 133 S.W.3d at 227; *Cnty. of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex.2002).

A party may challenge the trial court's subject matter jurisdiction by filing a plea to the jurisdiction. *Miranda,* 133 S.W.3d at 225–26. When such a plea challenges the claimant's pleadings, we determine whether the claimant has pleaded

facts that affirmatively demonstrate the trial court's jurisdiction, construing the pleadings liberally and in favor of the claimant. *Id.* at 226; *see also* TEX.R. CIV. P. 45 ("All pleadings shall be construed so as to do substantial justice."). If the pleadings do not allege facts sufficient to affirmatively demonstrate jurisdiction, but the pleading defects are curable by amendment, the issue is one of pleading sufficiency and the plaintiff should be afforded an opportunity to amend. *See Miranda,* 133 S.W.3d at 226–27; *see also Clifton v. Walters,* 308 S.W.3d 94, 98 (Tex.App.-Fort Worth 2010, pet. denied); *City of Austin v. Leggett,* 257 S.W.3d 456, 461 (Tex.App.-Austin 2008, pet. denied). If the pleadings affirmatively negate jurisdiction, the plea should be granted. *See Miranda,* 133 S.W.3d at 227; *Leggett,* 257 S.W.3d at 461.

When a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court must consider the relevant evidence submitted by the parties when necessary to resolve the jurisdictional issue. *See City of Waco v. Kirwan,* 298 S.W.3d 618, 622 (Tex.2009); *Miranda,* 133 S.W.3d at 227; *Clifton,* 308 S.W.3d at 98. This standard generally mirrors that of a traditional summary judgment. *See Miranda,* 133 S.W.3d at 228. We "take as true all evidence favorable to the nonmovant" and "indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Id.* at 228. "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact-finder." *Id.* at 227–28. "However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id.* at 228.

An appellate court's jurisdiction is limited to reviewing the grant or denial of the plea to the jurisdiction that was filed. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8); *City of Dallas v. Heard,* 252 S.W.3d 98, 103 (Tex.App.-Dallas 2008, pet. denied); *City of Dallas v. First Trade Union Sav. Bank,* 133 S.W.3d 680, 686–87 (Tex.App.-Dallas 2003, pet. denied). An appellate court does not have jurisdiction to consider grounds outside those raised in the plea to the jurisdiction. *Heard,* 252 S.W.3d at 103; *First Trade Union Sav. Bank,* 133 S.W.3d at 687.

### B. Analysis

#### 1. Universal Academy's Governmental Immunity From Suit

Under the common-law doctrine of sovereign immunity, the state cannot be sued without its consent. *City of Houston v. Williams,* 353 S.W.3d 128, 134 (Tex.2011) (citing *Tooke v. City of Mexia,* 197 S.W.3d 325, 331 (Tex.2006)); *see also City of Galveston v. State,* 217 S.W.3d 466, 471 (Tex.2007) (boundaries of sovereign immunity are determined by the judiciary). Governmental immunity operates like sovereign immunity to afford similar protection to subdivisions of the state, including counties, cities, and school districts. *Harris Cnty. v. Sykes,* 136 S.W.3d 635, 638 (Tex.2004) (citing *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 694 n. 3 (Tex.2003)); *Learners Online, Inc. v. Dallas Indep. Sch. Dist.,* 333 S.W.3d 636, 641–

42 (Tex.App.-Dallas 2009, no pet.). Like sovereign immunity, governmental immunity has two components: immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether. *Tooke,* 197 S.W.3d at 332. Governmental immunity from suit deprives a trial court of subject matter jurisdiction and is properly asserted in a plea to the jurisdiction.[3] *See Miranda,* 133 S.W.3d at 225–26.

In its appellate argument pertaining to its first issue, Universal Academy contends the trial court erred by denying its plea to the jurisdiction because it is immune from suit by virtue of section 12.103(a) of the education code. That section provides in part that "an open-enrollment charter school is subject to federal and state laws governing public schools." TEX. EDUC. CODE ANN. § 12.103(a) (West 2006). According to Universal Academy, by enacting section 12.103, the Legislature has "clearly instructed that the body of law which had grown around public school districts was to be applied equally to charter schools," with certain exceptions that are not relevant here.[4] Therefore, Universal Academy asserts, because public schools have immunity from suit, such immunity is also applicable to charter schools.

C2 Construction responds, in relevant part, (1) the immunity from liability provided to charter schools in section 12.1056 of the education code "precludes any ex-

---

3. Immunity from liability was not asserted by Universal Academy in its plea to the jurisdiction and is not addressed in this opinion. *See Heard,* 252 S.W.3d at 103; *First Trade Union Sav. Bank,* 133 S.W.3d at 687.

4. The exceptions stated in section 12.103 are as follows:
 (b) An open-enrollment charter school is subject to this code and rules adopted under this code only to the extent the applica-

bility to an open-enrollment charter school of a provision of this code or a rule adopted under this code is specifically provided.
(c) Notwithstanding Subsection (a), a campus of an open-enrollment charter school located in whole or in part in a municipality with a population of 20,000 or less is not subject to a municipal zoning ordinance governing public schools.
*Id.* § 12.103(b)-(c).

pansion" of that immunity from liability the Legislature has given to charter schools to immunity from suit; (2) no Texas statute or case confers sovereign or governmental immunity on charter schools; and (3) because charter schools did not exist under common law, they "may claim only those rights bestowed by statute."

We first address C2 Construction's contention, asserted in its second "cross point," that section 12.1056 "precludes any expansion of the immunity given to charter schools." Section 12.1056 of the education code, titled "Immunity from Liability," states in pertinent part that "in matters related to operation of an open-enrollment charter school, an open-enrollment charter school is immune from liability to the same extent as a school district, and its employees and volunteers are immune from liability to the same extent as school district employees and volunteers." *Id.* § 12.1056. In support of its argument, C2 Construction cites the "rule of statutory construction" *expressio unius est exclusio alterius*—the inclusion of a specific limitation implies the exclusion of all others. *See, e.g., Mid–Century Ins. Co. of Tex. v. Kidd,* 997 S.W.2d 265, 273–74 (Tex.1999). C2 Construction contends that because section 12.1056 grants charter schools only immunity from liability, that section precludes immunity from suit for charter schools. However, the supreme court has stated "[t]he doctrine of *expressio unius est exclusio alterius* is simply an aid to determine legislative intent, not an absolute rule." *Id.* at 274. Also, the supreme court has instructed that we do not resort to rules of construction unless a statute is ambiguous. *See In re Estate of Nash,* 220 S.W.3d 914, 917 (Tex.2007).

■ Neither party asserts, and the record does not show, that the language of section 12.1056 is ambiguous. C2 Con-

struction does not explain how the application of the doctrine of *expressio unius est exclusio alterius* is appropriate in this case to effect the exclusion of any immunity from suit. Nor does C2 Construction cite any authority to support the proposition that a legislative grant of immunity from liability precludes a grant of immunity from suit. Further, we observe the express language of section 12.1056 makes a specific declaration that a charter school "is immune from liability *to the same extent* as a school district." Tex. Educ.Code Ann. § 12.1056 (emphasis added). The Legislature did not include any language in section 12.1056 that shows any intention to exclude any other type of immunity. Moreover, the language, "is immune from liability to the same extent as a school district," in that section serves at least a two-fold purpose. First, the Legislature, by use of this plain language, affirmatively directs that a charter school is to receive the same measure of immunity from liability as the courts have declared is enjoyed by school districts. *Id.; cf. Ex parte City of Irving,* 343 S.W.3d 850, 856 (Tex.App.-Dallas 2011, pet. filed) (language stating taxpayer "is entitled to" refund was mandatory language that reflected legislative intent). Second, the Legislature declares any waivers of the immunity from liability of public schools apply "to the same extent" or equally to charter schools. Tex. Educ.Code Ann. § 12.1056. We decide against C2 Construction as to its second "cross point."

■ At this juncture, we address the question raised in Universal Academy's first issue as to whether, indeed, Universal Academy has immunity from suit. The parties have argued about whether the Legislature has purported to make a "grant" of immunity from suit to charter

schools in narrow statutory provisions.[5] However, we need not address those arguments because, as described above, governmental immunity, like sovereign immunity, is a common-law doctrine of the courts, the boundaries of which are determined by the judiciary. *See City of Galveston*, 217 S.W.3d at 471; *Tooke*, 197 S.W.3d at 331. Further, to the extent C2 Construction's contention that charter schools "did not exist under common law" and therefore "may claim only those rights bestowed by statute" asserts a limitation on the judiciary's determination of the boundaries of governmental immunity as to charter schools, that contention is unsupported by authority and contrary to supreme court authority. *See City of Galveston*, 217 S.W.3d at 471; *Tooke*, 197 S.W.3d at 331.

In reversing this Court's previous judgment in this case, the Texas Supreme Court stated, "[W]e reserve judgment on [Universal Academy's] immunity from suit, an issue not before us." *See LTTS Charter Sch.*, 342 S.W.3d at 78 n. 44.[6] However, in concluding Universal Academy is a "governmental unit" entitled to an interlocutory appeal under section 51.014(a)(8),

the supreme court reasoned, *inter alia*, that open-enrollment charter schools (1) are statutorily declared to be "part of the public school system of this state"; (2) derive "authority to wield 'the powers granted to [traditional public] schools' and to receive and spend state tax dollars (and in many ways to function as a governmental entity)" from a "comprehensive statutory regime"; (3) have "responsibility for implementing the state's system of public education"; and (4) "are generally subject to 'state laws and rules governing public schools,'" including regulation of open meetings and access to public information. *See id.* at 77–78 (footnotes omitted). Those same attributes and circumstances support a conclusion of governmental immunity. *See Univ. Interscholastic League v. Sw. Officials Ass'n, Inc.*, 319 S.W.3d 952, 962 (Tex.App.-Austin 2010, no pet.) (concluding UIL is subject to sovereign immunity because it is "required by statute to implement state education policies, granted rulemaking and enforcement power over such policies, subjected to extensive oversight from the legislative and executive branches, and statutorily classified as a component part of a governmental

---

5. As described above, Universal Academy asserts that in section 12.103 of the education code, the Legislature "clearly instructed that the body of law which had grown around public school districts was to be applied equally to charter schools." C2 Construction asserts this Court "should strictly construe Chapter 12 [of the education code] and not extend immunity beyond that expressly provided."

6. Additionally, the supreme court stated as follows respecting an argument made by the Solicitor General of Texas in a brief requested by that court:

 [T]he Solicitor General pivots on Section 12.1056's grant of immunity from liability to argue that if open-enrollment charter schools are *not* governmental units under the Tort Claims Act, then the Act does not apply. And if the Act does not apply, then

an open-enrollment charter school's immunity from tort liability is never waived. And if immunity is never waived, then Section 12.1056 would suggest that open-enrollment charter schools are immune from all tort liability, unique among all governmental entities in the State. The Solicitor General sees this as an illogical and surely unintended outcome—traditional public schools exposed to tort liability but charter schools exempt from it. We do not consider today the scope or effect of Section 12.1056, but assuming *arguendo* the Legislature can grant immunity from liability, it would seem odd for lawmakers to imbue open-enrollment charter schools with greater tort immunity than cities, counties, school districts, and other purely governmental entities.

 *Id.* (emphasis original).

unit"). Accordingly, based on the supreme court's analysis in *LTTS Charter School,* we conclude open-enrollment charter schools have governmental immunity from suit. *See id.; LTTS Charter Sch.,* 342 S.W.3d at 77–78; *cf. Dallas Area Rapid Transit v. Whitley,* 104 S.W.3d 540, 542 (Tex.2003) ("In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity."); *Tex. Parks & Wildlife Dep't v. Wilson,* 991 S.W.2d 93, 95 (Tex.App.-Austin 1999, pet. denied) ("Under common law, the State of Texas, its agencies, and other governmental units are immune from suit.").

We decide in favor of Universal Academy on its first issue to the extent that issue asserts Universal Academy has immunity from suit. We decide against C2 Construction on its second "cross point."

### 2. Proprietary Functions

Next, having concluded Universal Academy is entitled to governmental immunity, we consider C2 Construction's first "cross point," in which it asserts that even if Universal Academy is entitled to immunity from suit, such immunity is limited to those acts that further a governmental function. C2 Construction contends Universal Academy "carries out proprietary functions by using for private purposes a portion of the facilities that C2 built." According to C2 Construction, (1) Universal Academy "subleases a significant portion of the facility to the Universal Satori Learning Center for a fee, even though Satori is operated by the same individuals who are on [Universal Academy's] board"; (2) "[s]ince Satori existed prior to the Project, it is clear that [Universal Academy] intended for part of the Project to provide a home for the Satori school to be operated by the same individuals that run [Universal Academy]"; and (3) C2 Construc-

tion's claims and liens extend to the space leased by Satori. Additionally, C2 Construction asserts "the facility in question is not a public facility" and the "compensation that C2 received" came predominantly from private funds.

In support of its argument, C2 Construction cites (1) documents listing the board members and staff of Universal Academy and the directors of Satori; (2) an affidavit of Janice Blackmon, Universal Academy's director of administrative services, in which she testified, *inter alia,* that Universal Academy leases property from Reklaw and received funds from Reklaw for the Project; (3) an affidavit of Charles Coleman, president of C2 Construction, in which he stated, *inter alia,* that it was his understanding that Reklaw was funding the Project; (4) a request for admissions in which Universal Academy admitted that Reklaw paid C2 Construction for the work at issue; and (5) several printed pages stating the tuition, policies, and schedule of Satori.

 Cities and towns have been recognized as exercising dual functions, to wit, governmental and proprietary. *See Tooke,* 197 S.W.3d at 343. "The distinction has not been a clear one, but generally speaking, a municipality's proprietary functions are those conducted 'in its private capacity, for the benefit only of those within its corporate limits, and not as an arm of the government,' while its governmental functions are 'in the performance of purely governmental matters solely for the public benefit.'" *Id.* (footnotes omitted). "A municipality is not immune from suit for torts committed in the performance of its proprietary functions, as it is for torts committed in the performance of its governmental functions." *Id.* Additionally, contracts made by municipal corporations in their proprietary capacity have been held to be governed by the same rules as

contracts between individuals. *Gates v. City of Dallas*, 704 S.W.2d 737, 739 (Tex. 1986).

■■■ C2 Construction cites no authority, and we have found none, addressing the applicability of the proprietary-governmental dichotomy to open-enrollment charter schools. *Cf. Galveston Indep. Sch. Dist. v. Clear Lake Rehab. Hosp., L.L.C.*, 324 S.W.3d 802, 809 (Tex.App.-Houston [14th Dist.] 2010, no pet.) (law is unclear as to whether school districts can engage in both governmental and proprietary functions). Nor does C2 Construction explain how a governmental entity's receipt of private funds or leasing of property from a private entity constitute proprietary functions. Further, while the evidence cited by C2 Construction shows that four of the five directors of Satori are either on the staff or among the seven board members of Universal Academy, none of that evidence shows that Universal Academy is "using" the subleased premises for "private purposes." The record shows such premises are subleased by Universal Academy to Satori, and the documents stating the tuition, policies, and schedule of Satori do not mention Universal Academy. Even assuming without deciding that the proprietary-governmental dichotomy applies to the claims in this case, C2 Construction cites no authority, and we have found none, to support its position that Universal Academy is performing a proprietary function by subleasing space to Satori. *Cf.* Tex. Att'y Gen. Op. No. GA–0321, 2005 WL 1046489, at *5 (2005) (public school district has authority to lease real property to private entity). On this record, we cannot conclude the evidence creates a fact question as to whether Universal Academy was performing a proprietary function with respect to the acts complained of. *See Miranda*, 133 S.W.3d at 228 (where relevant evidence fails to raise fact ques-tion on jurisdictional issue, trial court should rule on plea to jurisdiction as matter of law).

We decide against C2 Construction on its first "cross point."

### 3. Claim Pursuant to 42 U.S.C. § 1983

In C2 Construction's fifth "cross point," it argues that even if Universal Academy "enjoys full governmental immunity" the trial court has jurisdiction to hear C2 Construction's claim under section 1983. C2 Construction asserted in its live petition that "[w]ith Universal claiming the status of a public school, Universal is subject to Section 1983 claims, and is liable to C2 under such Section, for its deprivation under color of Texas law of C2's property and other rights afforded to it by the United States Constitution, and more particularly, the Fifth and Fourteenth Amendments, and other federal and Texas laws." C2 Construction contends its section 1983 claim is "properly pled and founded upon the United States Constitution." Further, C2 Construction argues that if this Court concludes its pleading is deficient, it should be given an opportunity to amend.

In a supplement to its plea to the jurisdiction, Universal Academy contended C2 Construction has not invoked the trial court's jurisdiction as to its section 1983 claim because C2 Construction "has not asserted what federal right has been violated" and "[t]here is no federal right that could have been violated in this case." Specifically, Universal Academy argued (1) "[r]eading between the lines, we are left to assume that C2 is raising a 'deprivation of property without due process of law' allegation" and (2) the breach of a contract, upon which C2 Construction's section 1983 claim is "clearly based," is neither a confiscation of property nor a taking of property without due process of law. Universal

Academy asserted that "[b]eyond a breach of contract claim, C2 has not alleged an infraction of a civil right."

On appeal, Universal Academy contends "the law does not recognize a viable action under [section 1983] based upon a breach of contract" because "[b]reach of contract claims simply do not rise to the level of takings claims that invoke a trial court's jurisdiction against a sovereign." Universal Academy cites federal and Texas cases that it contends support that argument. Additionally, Universal Academy asserts "C2 Construction has not raised a single issue that indicates there is an aspect of the instant case that falls outside the scope of a breach of contract claim," and thus the trial court erred by denying Universal Academy's plea to the jurisdiction "against C2 Construction's [section 1983] takings claim that sounds wholly in contract."

■■■ Section 1983 provides in relevant part

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C.A. § 1983. "Texas courts have held that local governmental entities, such as school districts, do not enjoy immunity from suit under Section 1983." *Ogletree v. Glen Rose Indep. Sch. Dist.*, 226 S.W.3d 629, 633 (Tex.App.-Waco 2007, no pet.). Section 1983 liability requires proof that (1) the conduct complained of was committed under color of state law and (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or the laws of the United States. *Cnty. of El Paso v. Dorado*, 180 S.W.3d

854, 862 (Tex.App.-El Paso 2005, pet. denied).

■■■ The record shows that in its live petition, C2 Construction "incorporated by reference and reaverred" paragraphs one through fifty-five of that petition in its section 1983 claim. Those paragraphs included claims for breach of contract, quantum meruit and unjust enrichment, enforcement of lien affidavit, and interest. Further, C2 Construction stated as part of its section 1983 claim that if there is any legal merit to Universal Academy's assertion of immunity from suit, "then C2 is entitled to relief under [section 1983], and to receive exactly the same damages C2 has alleged in previous Counts in this petition." Thus, even assuming without deciding that, as Universal Academy contends, "the law does not recognize a viable action under [section 1983] based upon a breach of contract," we cannot agree that C2 Construction's petition is insufficient to plead a cause of action under section 1983. *See Miranda*, 133 S.W.3d at 226 (in determining whether claimant has pleaded facts that affirmatively demonstrate trial court's jurisdiction, we construe pleadings liberally and in favor of claimant). Further, to the extent Universal Academy challenges the existence of a jurisdictional fact issue, the record shows Coleman testified in an affidavit that C2 Construction performed work on the Project, is owed payment for its work, and has filed an affidavit of mechanic's and materialman's lien against the Project. That testimony raises a fact issue as to whether C2 Construction's section 1983 claim "sounds wholly in contract" or, rather, pertains to facts supporting C2 Construction's other claims asserted in its petition. *See id.* at 227–28.

We conclude the trial court did not err by denying Universal Academy's plea to the jurisdiction as to C2 Construction's

claim under section 1983. We decide in favor of C2 Construction on its fifth "cross point."

### 4. Effect of Counterclaims and Non–Suit

In its second issue, Universal Academy asserts that any immunity from suit that it may have "partially waived" by filing its counterclaims was "fully restored" when it dismissed those counterclaims.[7] C2 Construction argues Universal Academy should not be allowed to "avoid C2's claims by simply withdrawing its counterclaim to revive its sovereign immunity defense" after more than fifteen months of litigation because that would be "fundamentally unfair" and "substantially prejudice" C2 Construction.

While this appeal was pending, the Texas Supreme Court issued its opinion in *City of Dallas v. Albert*, 354 S.W.3d 368 (Tex.2011), in which it addressed this issue directly. In *Albert*, the supreme court reiterated its previous holding that "[a] governmental entity does not have immunity from suit for monetary claims against it that are 'germane to, connected with, and properly defensive to' affirmative claims made by the entity, to the extent the claims against the entity offset the entity's claims." *Id.* at 372 (quoting *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 378 (Tex.2004)). Therefore, the supreme court explained, the filing of counterclaims for affirmative relief by the governmental entity in that case, the City of Dallas, resulted in the plaintiffs having two possible categories of damages claims pending. *Id.* at 373. The first category consisted of claims that would offset, in whole or in part, any recovery by the City and that were germane to, connected with,

and properly defensive to the City's claims. *Id.* The second category consisted of (a) claims for amounts over and above the amount that would offset the City's claims, but were nevertheless germane to, connected with, and properly defensive to the City's claims; and (b) claims that simply were not germane to, connected with, or properly defensive to the City's claims. *Id.* The supreme court stated the City had immunity from suit as to both types of claims in the second category, but it did not have immunity from suit as to claims in the first category. *Id.*

Then, the supreme court reasoned that because a governmental entity does not have immunity from suit as to claims in the first category once it files its counterclaims, it cannot "either 'reinstate' such immunity, or, put differently, in effect create it, by non-suiting." *Id.* Rather, the supreme court concluded, a trial court retains jurisdiction over a plaintiff's claims to the extent it has acquired it. *Id.* at 375. However, the supreme court explained, although a trial court has jurisdiction over a plaintiff's claims that would have been offsets to a governmental entity's counterclaims, after a non-suit of the governmental entity's claims, the governmental entity no longer has claims for recovery that the plaintiff's claims could offset. *Id.* Thus, the supreme court reasoned, after the City's non-suit, the *Albert* plaintiffs "could not prevail on their breach of contract claims because they could not recover a judgment for damages and the City was not pursuing a claim for damages to which an offset would apply." *Id.*

We conclude Universal Academy has no immunity from suit as to claims of C2 Construction that would have offset, in

---

7. We construe Universal Academy's second issue to address only claims of C2 Construction to which immunity would otherwise attach. Therefore, because we concluded above that immunity from suit is not applicable as to C2 Construction's section 1983 claim, that claim is excluded from this analysis.

whole or in part, any recovery by Universal Academy and that were germane to, connected with, and properly defensive to Universal Academy's claims. *See id.* at 374. Therefore, the trial court did not err by denying Universal Academy's plea to the jurisdiction as to such claims.[8]

We decide against Universal Academy on its second issue.

### 5. Waiver of Immunity Pursuant to § 271.152

Now, we address whether Universal Academy's immunity from suit was waived pursuant to Texas Local Government Code section 271.152.

 "[E]ven if the State acknowledges liability on a claim, immunity from suit bars a remedy until the Legislature consents to suit." *Learners Online,* 333 S.W.3d at 642 (quoting *Ben Bolt–Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self–Ins. Fund,* 212 S.W.3d 320, 324 (Tex. 2006)). The plaintiff bears the burden of pleading facts affirmatively demonstrating waiver of immunity from suit and must also raise a fact question on the jurisdictional facts if a jurisdictional plea is supported with evidence. *City of Irving v. Seppy,* 301 S.W.3d 435, 443 (Tex.App.-Dallas 2009, no pet.).

Under section 271.152, which is contained in subchapter I of local government code chapter 271, "[a] local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of contract." TEX. LOCAL GOV'T CODE ANN. § 271.152; *Learners Online,* 333 S.W.3d at 642. Pursuant to definitions set out in section 271.151, " '[l]ocal governmental entity' means a political subdivision of this State ... including a ... public school district." TEX. LOCAL GOV'T CODE ANN. § 271.151(3); *see also Learners Online,* 333 S.W.3d at 642 (public school district does not waive immunity from suit when it enters into contract, except as provided by section 271.152). "Contract subject to this subchapter" is defined as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." TEX. LOCAL GOV'T CODE ANN. § 271.151(2); *Learners Online,* 333 S.W.3d at 642.

 "Written" contracts may be embodied in more than one document. *See Williams,* 353 S.W.3d at 138; *City of Houston v. Clear Channel Outdoor, Inc.,* 233 S.W.3d 441, 445 (Tex.App.-Houston [14th Dist.] 2007, no pet.). "Essential terms" have been characterized as, *inter alia,* " 'the time of performance, the price to be paid, ... [and] the service to be rendered.' " *Williams,* 353 S.W.3d at 138 (quoting *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.,* 320 S.W.3d 829, 838 (Tex.2010)). Finally, "to 'execute' means to 'finish' or to 'complete.' " *Id.*

---

**8.** Pursuant to *Albert,* following Universal Academy's non-suit, C2 Construction cannot recover judgment for damages against Universal Academy based on the trial court's limited jurisdiction resulting from Universal Academy's counterclaim because Universal Academy is no longer pursuing a claim for damages to which an offset would apply. *See id.* at 375. Therefore, no determination is necessary in this case respecting the extent to which C2 Construction's claims are "offsetting." *See id.* at 377 (after non-suiting counterclaims, governmental entity that had full immunity before making affirmative claims can "make both a motion for summary judgment and a motion to dismiss based on immunity from suit, and it should prevail on all the claims against it regardless of whether the claims against it were defensive, offsetting claims, or otherwise").

"[I]t is not necessary to sign an instrument in order to execute it, unless the parties agree that a signature was required." *Id.*

In its third issue, while Universal Academy asserts it is a "local government entity" for purposes of section 271.152, it contends the criteria of that section have not been satisfied. Specifically, Universal Academy argues the requirements of section 271.152 are not met because the contract at issue is "oral," not a "written contract," does not state the "essential terms of the agreement," and was not "properly executed."

C2 Construction contends in its third "cross point" that Universal Academy is not subject to section 271.152 because it is not a "local government entity" for purposes of section 271.152. C2 Construction argues that "charter schools are not included therein [section 271.151(3) ] and no statute otherwise equates charter schools or charter holders with public school districts for the purposes of such provisions." Further, C2 Construction argues, even if Universal Academy qualifies as a "local government entity" for purposes of section 271.152, the record contains evidence that the conduct of Universal Academy's board of directors and Blackmon "in approving the Project, retaining C2, receiving, but not signing a written contract, and acceptance of C2 Construction's work" met the criteria for waiver of immunity from suit pursuant to that section.

■ The parties cite no case law, and we have found none, specifically addressing whether an open-enrollment charter school is a "political subdivision" or "public school district" for purposes of the definition of "local governmental entity" in section 271.151(3). *See* Tex. Local Gov't Code Ann. § 271.151(3); *cf.* Tex. Educ.Code Ann. § 12.1053(b) (open-enrollment charter

school is considered to be "governmental entity" for purposes of subchapter B of chapter 271 of local government code and "political subdivision" for purposes of subchapter A of chapter 2254 of government code). However, we cannot agree with C2 Construction that section 271.152 is inapplicable to open-enrollment charter schools. We concluded above that open-enrollment charter schools enjoy immunity from suit. This Court has found no other Texas statute that purports to waive immunity from suit as to open-enrollment charter schools in breach of contract actions. Accordingly, it stands to reason, a conclusion that an open-enrollment charter school is not a "local governmental entity" for purposes of section 271.152 would mean that an open-enrollment charter school's immunity from suit is never waived in breach of contract actions. Under those circumstances, open-enrollment charter schools would be imbued with much greater immunity from suit for breach of contract than public school districts. That result would seem odd. *See LTTS Charter Sch.*, 342 S.W.3d at 78 n. 44 ("it would seem odd for lawmakers to imbue open-enrollment charter schools with greater tort immunity than cities, counties, school districts, and other purely governmental entities"); *cf.* Tex. Educ.Code Ann. § 12.103 ("an open-enrollment charter school is subject to federal and state laws and rules governing public schools").

■ In construing a statute, "[w]e presume the Legislature intended a just and reasonable result by enacting the statute." *City of Rockwall v. Hughes*, 246 S.W.3d 621, 626 (Tex.2008) (citing Tex. Gov't Code Ann. § 311.021(3) (West 2005)); *see also* Tex. Gov't Code Ann. § 311.023(5) (factors court may consider in construing statutes include "consequences of a particular con-

struction").[9] Because the consequences of concluding open-enrollment charter schools are not "local governmental entities" under section 271.152 would be neither just nor reasonable under the logic expressed by the supreme court, we decline to do so. *See LTTS Charter Sch.,* 342 S.W.3d at 76–79. We conclude an open-enrollment charter school is a "local governmental entity" for purposes of section 271.152.

In light of that conclusion, we next consider whether this case involves a "contract" as defined in section 271.151(2). *See* TEX. LOCAL GOV'T CODE ANN. § 271.151(2). The record reflects there is no dispute that, in fact, no written contract was signed by Universal Academy. C2 Construction pleaded, in relevant part, as follows: (1) "C2 and Defendants Universal and Reklaw entered into the Agreement which required C2 to perform certain specified work on the Project, and for Defendants Universal and Reklaw to pay for such work"; (2) "C2 performed the work required under the Agreement, but Defendants Universal and Reklaw failed to pay C2 in full for C2's work on the Project"; (3) "[a]lthough C2 and Universal discussed the terms of a written agreement, Universal never signed the written agreement"; (4) "[a]s a result, C2 at least has an oral agreement to perform work on the Project and to receive payment for such work"; (5) "Universal never provided reasons why Universal did not sign the written contract for the project"; and (6) "Universal never advised C2 that C2 could not be paid because Universal did not sign the written contract for the Project." Additionally, Coleman, president of C2 Construction, testified in an affidavit, *inter alia,*

> At one point, when we met to discuss the cost of the Project and the Project budget, Ms. Blackmon told me that the school had $500,000 of its own money and $500,000 in matching money from Reklaw, setting the Project budget at $1 million.
>
> . . . .
>
> Later, after Ms. Blackmon had expanded the Project still further, the cost of the Project rose to about $1.326 million. Mr. Akinwunmi [the architect] and I met with Ms. Blackmon to discuss that estimate and the Project budget, and to inquire as to whether we needed to trim the scope to match the money that the school had. When we met, Ms. Blackmon indicated that the financial arrangements had changed. Ms. Blackmon said to me and Mr. Akinwunmi that Reklaw was now funding the entire Project, and that the increased cost was not a concern. At that point, she no longer limited the amount of money that Reklaw was paying for the Project. . . .
>
> . . . .
>
> In July 2005, I prepared a draft contract listing Universal as the owner of the Project, and submitted the draft contract to Ms. Blackmon at a meeting. Ms. Blackmon had comments and requested changes. Later in July 2005, I made the requested changes to the draft contract and resubmitted it to Universal. I still did not know with whom C2 would be contracting, and whether Universal

9. We refer again to legislation that identifies charter schools as having attributes of school districts. Charter schools enjoy immunity from liability "to the same extent as a school district." *See* TEX EDUC CODE ANN. § 12.1056. Charter schools are subject to federal and state laws governing public schools. *See id.* § 12.103. Further, charter schools are gov-ernmental units that derive "status as 'part of the public school system of this state'" and "authority to wield 'the powers granted to [traditional public] schools' and to receive and spend state tax dollars (and in many ways to function as a governmental entity)" based on a "comprehensive statutory regime." *LTTS Charter Sch.,* 342 S.W.3d at 78.

or Reklaw would be signing the contract. As it turns out, neither Universal nor Reklaw signed the contract for C2's work on the Project. On several occasions, I asked Ms. Blackmon how review of the draft contract was progressing. More than once, I asked Ms. Blackmon when the contract would be signed. Ms. Blackmon told me more than once that the lawyers were reviewing the contract. She never told me that Universal would not sign the contract.

C2 Construction argues the record shows the purported contract was "executed" because of the actions of Universal Academy's board of directors. On January 13, 2005, Universal Academy's board of directors unanimously passed a motion approving "the process of securing an appropriate facility" for its school campus for the 2005–2006 school year. Further, C2 Construction asserts that in response to C2 Construction's second request for admissions, Universal Academy admitted (1) "Universal's Board of Directors authorized Janice Blackmon to negotiate with C2 concerning the scope of the Project," and (2) "Universal's Board of Directors authorized Janice Blackmon to select a contractor for the Project."

Responding, Universal Academy contends it "never saw or received a written contract from C2 Construction prior to or during the construction project" and "there is no written contract setting forth essential terms for this project." Further, Universal Academy argues that its board "never considered a contract with C2 Construction," no motion was passed approving of contracting with C2 Construction, and "no one on behalf of Universal Acade-

my executed any contract on behalf of Universal Academy." Universal Academy cites deposition testimony of Blackmon that (1) with respect to C2 Construction, "We had an oral agreement"; (2) such agreement was that C2 Construction was hired to perform construction work at a price not to exceed $1 million; and (3) "We weren't aware there was a contract ever produced until sometime after March and before May [2006]." [10]

In support of its argument, C2 Construction cites *Clear Channel Outdoor* and asserts that case stands for the proposition that "where there is a written contract with a local government entity, although unsigned, and the governing board of the governmental entity has taken action to approve the contract, the written document and the governing board's action taken together will constitute a written agreement." However, that case is distinguishable.

In *Clear Channel Outdoor*, the City of Houston was engaged in a street repair project and needed an easement as to property on which a billboard sign owned by Clear Channel, Inc. ("Clear Channel") was located. *See Clear Channel Outdoor*, 233 S.W.3d at 443. Clear Channel received a Purchase Agreement signed by a consultant to the City, and Clear Channel signed and returned that Purchase Agreement. *Id.* At a city council meeting several months later, the City passed a motion recommending condemnation of the property, including the billboard sign, and payment of the amount stated in the Purchase Agreement. *Id.* at 444. Subsequently, the City withdrew its offer to purchase the billboard sign, and Clear

---

**10.** Additionally, Universal Academy cites its response to C2 Construction's second request for admissions in which Universal Academy denied that "[i]n or about July 2005, C2 provided a proposed written contract to Univer-

sal for the Project." However, "[a]dmissions are binding only against the party making the admission." *See U.S. Fid. & Guar. Co. v. Goudeau*, 272 S.W.3d 603, 610 (Tex.2008).

Channel sued the City for breach of contract. *Id.* The City filed a plea to the jurisdiction asserting the contract to purchase the billboard sign from Clear Channel was not properly executed because it was not signed by the mayor and the controller as required by the Houston city charter. *Id.* The trial court denied the plea. *Id.* Affirming the trial court's ruling, the court of appeals observed that another provision of the City's charter provided that the motion to condemn was "in full force and effect." *Id.* at 446. The court reasoned that the adoption of the motion was the "last step" needed to complete the written contract between the parties, and the requirements of section 271.151(2) had been satisfied. *Id.* at 446–47. However, in this case, unlike in *Clear Channel Outdoor*, no motion was passed by Universal Academy's board approving a contract with C2 Construction. *See id.* We cannot agree *Clear Channel Outdoor* is persuasive on these facts. *Id.; see also Williams*, 353 S.W.3d at 139 ("execute" means to "finish" or "complete").

■ On this record, we cannot conclude a fact issue exists as to whether a contract was "properly executed" on behalf of Universal Academy. *See* TEX. LOCAL GOV'T CODE ANN. § 271.151(2). Accordingly, there was no waiver of immunity from suit pursuant to that section as to C2 Construction's claims.[11]

We decide in favor of Universal Academy on its third issue and against C2 Construction on its third "cross point."

6. Violation of Open Courts Doctrine

Finally, we address C2 Construction's fourth "cross point," in which it asserts that "[i]f Education Code Section 12.1056 restricts C2's breach of contract claim by granting Universal immunity from suit, then the Legislature's grant of immunity under that section impermissibly restricts a common law cause of action and violates the Texas Constitution's Open Courts Doctrine." According to C2 Construction, this Court should "strike down [section 12.1056] as unconstitutional, and deny Universal's Plea on such grounds."[12]

■ The "open courts" provision of the Texas Constitution "applies only to statutory restrictions of a cognizable common law cause of action." *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 499 (Tex. 1995). Where a party does not challenge a legislative act that infringes upon a common law cause of action, an "open courts" challenge is inapplicable. *Id.; see Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 410 (Tex.1997) (where university's sovereign immunity from suit arose from common law, there was no legislative action that could be challenged under "open courts" provision), *superseded on other grounds by* TEX. GOV'T CODE ANN. §§ 2260.001–.008 (West 2008).

■ C2 Construction contends that, unlike sovereign immunity from suit arising out of common law, "the immunity conferred upon charter schools is solely a creature of statute," specifically section 12.1056 of the education code. *See* TEX. EDUC.CODE ANN. § 12.1056. However, as stated above, our conclusions respecting charter schools' immunity from suit are in no way based on section 12.1056 or any other legislative "grant" of immunity. *See City of Galveston*, 217 S.W.3d at 471 (boundaries of sovereign immunity are de-

---

11. C2 Construction asserts no basis for waiver of immunity from suit other than section 271.152 as to any of its claims.

12. C2 Construction does not explain, and the record does not show, the basis for C2 Construction's assertion respecting section 12.1056's granting of immunity from suit.

termined by the judiciary). Therefore, to the extent C2 Construction's fourth "cross point" presumes that a legislative "grant" of immunity pursuant to section 12.1056 is the sole possible basis for Universal Academy's immunity from suit, that "cross point" is moot. *See Gen. Agents Ins. Co. of Am., Inc. v. El Naggar*, 340 S.W.3d 552, 556 (Tex.App.-Houston [14th Dist.] 2011, no pet.) (issue may become moot when party seeks ruling on matter which, when rendered, would not have any practical legal effect on then-existing controversy).

Moreover, even assuming, without deciding, that the Legislature has authority to confer immunity from suit on charter schools, we cannot conclude section 12.1056 does so. *See* TEX. EDUC.CODE ANN. § 12.1056. As described above, neither party argues, and the record does not show, that the language of section 12.1056 is ambiguous. "If the words of a statute are clear and unambiguous, we apply them according to their plain and common meaning." *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex.2009). The unambiguous language of section 12.1056 specifically addresses immunity "from liability" and does not address or refer to immunity from suit. *See* TEX. EDUC.CODE ANN. § 12.1056.

We decide against C2 Construction on its fourth "cross point."

### III. CONCLUSION

We conclude Universal Academy has governmental immunity from suit as to all claims of C2 Construction except (1) C2 Construction's claim under section 1983 and (2) any remaining claims of C2 Construction that would have offset, in whole or in part, any recovery by Universal Academy and that were germane to, connected with, and properly defensive to Universal Academy's claims. Further, we conclude immunity from suit was not waived pursuant to section 271.152.

We decide in favor of Universal Academy as to part of its first issue and as to its third issue. Additionally, we decide in favor of C2 Construction on its fifth "cross point." We decide each of the remaining issues and "cross points" against the asserting party.

We (1) affirm the portion of the trial court's order denying Universal Academy's plea to the jurisdiction as to C2 Construction's section 1983 claim and any remaining claims of C2 Construction that would have offset, in whole or in part, any recovery by Universal Academy and that were germane to, connected with, and properly defensive to Universal Academy's claims; (2) reverse the trial court's order and render judgment ·granting Universal Academy's plea to the jurisdiction as to C2 Construction's claims other than those as to which the trial court's order is affirmed; and (3) remand this case to the trial court for further proceedings in accordance with this opinion.